Adams *vs.* Michael.

(Decided 23d May, 1873.)

---

JOHN F. ADAMS and SAMUEL H. ADAMS *vs.* ALEXANDER D. MICHAEL.

*Nuisance to Dwelling-houses—Injunction—Smoke from a Factory—Offensive odors—noxious Vapors—Insufficiency of the Allegations of a Bill for an Injunction to restrain a Nuisance—Bill dismissed without prejudice.*

A Court of Equity will interpose by injunction to restrain an existing or threatened nuisance to a dwelling-house, if the injury be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it; and if it appear to be a case where substantial damages could be recovered at law.

If a party erect a manufacturing establishment in immediate proximity to the dwellings of his neighbors, and in its operation large volumes of smoke, offensive odors and noxious vapors are emitted, thereby materially interfering with the comfort of the occupants of the dwellings, a Court of Equity will interpose by injunction to restrain the continuance of the nuisance.

The appellants filed their bill for an injunction to restrain the appellee from erecting a factory for the manufacture of felt roofing, in the immediate vicinity of certain valuable dwelling-houses, the property of the complainants, which factory, if allowed to be erected and put into operation, would, it was charged, become a nuisance specially injurious to the complainants. The bill alleged that owing to the dirt, odor, smoke and appurtenances of the factory, together with the inflammable nature of the material used in the manufacture of felt roofing, the property of the complainants would be

Adams *vs.* Michael.

utterly destroyed as dwellings, and, that one of the complainants would be deprived of the comforts of his home, and the health of his family would be impaired by the nuisance. The bill further alleged that the irreparable and continuing injury to the complainants' property, and the value thereof, and to their just enjoyment of the same, would result from the erection and carrying on of the said manufacturing business    HELD:

That the allegations of the bill were not sufficiently specific and definite as to the facts and circumstances from which the Court alone could determine whether the nuisance would be of the nature and character supposed—the simple allegation that particular consequences would follow the erection of the factory, was not sufficient; facts should have been stated so that the Court could see and determine whether the factory when erected, would or would not constitute a nuisance such as would sensibly and materially diminish the value of the complainants' property and the ordinary comfort and enjoyment of it. That the bill thus failing to disclose all the facts essential to enable the Court to form an opinion as to the propriety of granting an injunction, the application must be refused, but without prejudice to any new application the complainants might think themselves entitled to make.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted on briefs to BARTOL, C. J., STEWART, BOWIE, BRENT, MILLER and ALVEY, J.

*J. Alex. Preston,* for the appellants,

Referred to the following authorities: *Mayor, &c., of Frederick vs. Groshon,* 30 *Md.,* 436; *Hamilton vs. Whitridge, et al.,* 11 *Md.,* 136, 137, 147; *City of Georgetown vs. Alexandria Canal Company,* 12 *Peters,* 91; *Dennis vs. Echardt,* 2 *Am. Law Reg.,* (*N. S.*) 169; *Corning vs. Lowerre,* 6 *Johns. Ch.,* 439; *Milhau vs. Sharp,* 28 *Barb.,* 228; *Hilliard on Injunctions,* 302; *Kerr on Injunctions,* 360, 361; (*Ed. of* 1871.)

No appearance for the appellee.

ALVEY, J., delivered the opinion of the Court.

In this case, an application is made for an injunction to restrain the defendant from erecting a factory for the manufacture of felt-roofing, in the immediate vicinity of certain valuable dwelling-houses, the property of the complainants, and which factory, if allowed to be erected and put into operation, will, it is alleged, become a nuisance, specially injurious to the complainants.

It is alleged, that, owing to the dirt, odor, smoke, and appurtenances of such factory, together with the inflammable nature of the material used in the manufacture of felt-roofing, the property of the complainants would be utterly destroyed as dwellings, and that "one of your orators would be deprived of the comforts of his home, and the health of his family would be impaired by the nuisance as aforesaid." The complainants further allege, "that irreparable and continuing injury to their property and the value thereof, and to their just enjoyment of the same, will result from the erection and carrying on of the said manufacturing business as aforesaid." These are the only allegations in reference to the nature and effect of the alleged contemplated nuisance. Nothing more specific is to be found in the bill.

The Court below refused the injunction, and from its order this appeal is taken.

There is no question or difficulty in regard to the principle invoked by the complainants in this case. The power to interfere by injunction to restrain a party from so using his own property as to destroy or materially prejudice the rights of his neighbor, and thus to enforce the maxim, "*sic utere tuo ut alienum non lædas*," is not only a well established jurisdiction of the Court of Chancery, but is one of great utility, and which is constantly exercised. Indeed, without such jurisdiction, parties would, in many cases, suffer the greatest wrongs, for which actions at law would afford them no adequate redress. It

is not every inconvenience, however, in the nature of a nuisance to a party's dwelling, especially in a large commercial and manufacturing city, that will call forth the restraining power of a Court of Chancery by injunction. To justify an injunction to restrain an existing or threatened nuisance to a dwelling-house, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it. Unless such a case is presented a Court of Chancery does not interfere. It must appear to be a case of real injury, and where a court of law would award substantial damages. *Walter vs. Selfe,* 4 *De G. & Sm.,* 323; *Jackson vs. Duke of Newcastle,* 33 *L. J., ch.* 698; *Soltan vs. De Held,* 2 *Sim. N. S.,* 159; *Kerr on Inj.,* 350. Where, however, such is shown to be the case, the power of the Court is clear, and it will interpose by injunction.

Now, it is certainly true that the owners or occupiers of dwelling-houses, whether in the city or country, have the right to enjoy pure and wholesome air, that is, as pure and wholesome as their local situation can reasonably supply; and any act which materially corrupts or pollutes the air, done without authority or justification, is strictly a nuisance. *Aldred's case,* 9 *Co. R.,* 58. If, therefore, a party should erect a manufacturing establishment in immediate proximity to the dwellings of his neighbors, and in the operation of which, large volumes of smoke, offensive odors, and noxious vapors are emitted, whereby the comfort of the occupiers of the dwellings is materially interfered with, it would certainly present a case requiring the exercise of the restraining or preventive power of a Court of Chancery. This has been decided in numerous cases, and the principle of the decisions as applicable to a case like the present, is very fully and clearly stated by Lord ROMILLY, M. R., in the recent case of *Crump vs. Lambert,* 15 *W. R.,* 417. In that case, the

Adams *vs.* Michael·

plaintiff was the owner of two semi-detached houses in the outskirts of the town of Walsall, together with a garden in front of them, and was the occupier of one of the houses and the garden. The defendant, a manufacturer of iron bedsteads, erected a new factory adjoining the wall of the plaintiff's garden, in which the whole process of the business, including the smelting of pigs of iron, was carried on. This subjecting the plaintiff to annoyance, he applied to have the defendant restrained, and alleged three causes of injury to the enjoyment of his property by reason of the establishment of the new factory; first, the great addition to the smoke of the neighborhood which it caused; secondly, the noxious gases and offensive odors emitted from it; and, thirdly, the noise of hammers and the voices of the workmen. The questions both of law and fact, were much controverted by the defendant; but the Master of the Rolls, in the course of his opinion, said: "With respect to the question of law, I consider it to be established by numerous decisions, that smoke, unaccompanied with noise or with noxious vapors—that noise alone, that offensive odors alone—although not injurious to health; may severally constitute a nuisance to the owner of adjoining or neighboring property, and that if they do so, substantial damages may be recovered at law, and that this Court, if applied to, will restrain the continuance of the nuisance by injunction in all cases where substantial damages could be recovered at law." Again, he said, "The law on this subject is, I apprehend, the same, whether it be enforced by action at law or by bill in equity. In any case, where a plaintiff would obtain substantial damages at law, he is entitled to an injunction to restrain the nuisance in this Court. There is, I apprehend, no distinction between any of the cases, whether it be smoke, smell, noise, vapors, or water, or any gas or fluid. The owner of one tenement cannot cause or permit to pass over, or flow into his

neighbor's tenement, any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighboring tenement, or so as to injure his property." And, after some further observations, he said, "The real question in all the cases is the question of fact, viz: whether the annoyance is such as materially to interfere with the ordinary comfort of human existence? This is what is established in the *St. Helen's Smelting Company vs. Tipping*, (4 *B. & S.*, 608; 11 *H. L. Cas.*, 642,) and that is the question which is to be tried in the present case." And, upon review of the facts, he was of opinion that the smoke and noise proceeding from the works of the defendant, constituted a substantial nuisance, and that the plaintiff was entitled to the assistance of the Court.

The principle of the case just referred to, and of the cases upon which it is founded, has been fully recognized and sanctioned by the Court, in the case of *Hamilton vs. Whitridge*, 11 *Md.*, 128, though applied in that case to the restraint of an offensive nuisance of a different character from that threatened in the present case.

But, though the law invoked be thus well established, the difficulty in the complainants' case consists in the defective manner in which the facts of it are disclosed. As we have seen, the allegations of the bill, while very strong as to what is to be the consequence of the establishment of the factory, they are exceedingly general and indefinite as to the facts and circumstances from which the Court alone can determine whether the nuisance will be of the nature and character supposed. It is not enough for the parties complaining simply to allege that particular consequences will follow the erection of the factory; that may be their opinion or apprehension; but facts must be stated so that the Court can see and determine whether the allegation is well founded. There is no allegation in the bill before us as to the precise proximity of

the intended factory to the buildings of the complainants, nor are there any allegations as to the extent of the factory, what combustible materials are to be used therein, or the quantity of smoke and vapor likely to be emitted therefrom. These are facts that are important to be known, and without full disclosure in regard to them the Court is utterly unable to conclude whether the factory when erected will certainly constitute a nuisance, such as will sensibly and materially diminish the value of the complainants' property, and the ordinary comfort and enjoyment of it or not. The granting of injunctions on applications of this character involves the exercise of a most delicate power, and the Court is always reluctant to act except in cases where the right is clear and unquestioned, and the facts show an urgent necessity. The general rule is, that an injunction will only be granted to restrain an actual existing nuisance; but where it can be plainly seen that acts which, when completed, will certainly constitute or result in a grievous nuisance, or where a party threatens, or begins to do, or insists upon his right to do certain acts, the Court will interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the Court to form an opinion as to the illegality of the acts complained of, and the irreparable injury which will ensue. *Dawson vs. Paver,* 5 *Hare,* 430; *Elwell vs. Crowther,* 31 *Beav.,* 169; *Palmer vs. Paul,* 2 *L. J., Ch.* 154; *Kerr on Inj.,* 339. The Court, however, must in all such cases, at the time the motion is made, be enabled either to form its own opinion, from the circumstances of the case, as to the legality of the meditated purpose of the defendant, or to put that question into a course of immediate trial; and where that cannot be done, the motion for the injunction will not be allowed to stand over till the purpose of the defendant has been so far executed as that its character may be judged of, but the application will be at once

refused, though without prejudice to any future applica-
tion. *Haines vs. Taylor*, 2 *Ph.*, 209.

In this case, as the bill fails to disclose all the essential
facts to enable the Court to form an opinion as to the pro-
priety of granting the injunction, the order appealed from
must be affirmed, and the bill will be dismissed, but with-
out prejudice to any new application that the complain-
ants may think themselves entitled to make.

*Order affirmed, and
bill dismissed.*

(Decided 30 May, 1873.)