# THE SUSQUEHANNA FERTILIZER CO. vs. ANDREW SPANGLER et al.

*Nuisance—Injury to Property by Noxious Gases from Fertilizer Factory—Action for Damages.*

Where a fertilizer factory, operated by the defendant, emits noxious smoke and gases which corrode and injure the adjoining property of the plaintiff, and cause great physical discomfort to his family there residing and result in depreciating the value of the property, the defendant is liable therefor in an action of damages, although he exercised care and skill and used the most approved appliances in the management of his works.

If the noxious vapors, etc., emitted by defendant's factory interfere with the comfortable enjoyment of plaintiff's property and occasion material injury to the same, it is no defence that the locality in question is one where many factories are situated, and that defendant's trade is lawful and useful.

There is a limit to the discomforts and annoyances to which a party may be required to subject himself by living in a city or a manufacturing district.

Appeal from the Court of Common Pleas (HARLAN, C. J.) At the trial the following prayers were offered :

*Plaintiffs' First Prayer.*—If the jury find that the plaintiffs are possessed of the premises referred to in the evidence, situate at the corner of First street and 8th avenue, and that they became possessed of said ground and the buildings in October, 1882, and if the jury find that in 1883 the defendant leased certain ground on the same street and almost opposite the plaintiffs' premises, and commenced the manufacture of sulphuric acid fertilizers, and that by subsequent assignments they became possessed of certain other premises adjoining, which were leased by Bowen and Mercer in the fall of the year 1880, and on which said Bowen and Mercer, in the following winter erected buildings and commenced the manufacture of sulphuric acid fertilizers, and if they find that the defendant has combined its works, begun in 1883 or thereabouts, with those of said Bowen and Mercer,

and has largely increased their production by the use of larger quantities of material, and run the same or a portion thereof at times, day and night, and that whilst so engaged the defendant caused large quantities of foul and offensive smoke, gas and dust of a suffocating character and charged with acids, to be emitted from its premises, which settled on the plaintiffs' premises and entered their houses, and that the acids contained therein, corrode and injure their buildings, and are destructive to the clothes and furniture therein, whenever exposed to the same. And if they find that said gas and smoke are emitted in such quantities as to cause great bodily discomfort to the plaintiffs and their family and that they produce violent coughing and nausea, and prevent at times the taking of necessary food, and compel the occupants of said dwellings to keep their doors and windows closed at times or seek relief by leaving the premises, and that thereby the value of the plaintiffs' property is depreciated and they have suffered injury by loss of custom at the store kept by plaintiffs, if the jury find such, then the plaintiffs are entitled to recover in this action. (Granted).

*Plaintiffs' Second Prayer.*—If the jury find from the evidence that the defendant used care and skill, and the employment of the best and most improved appliances in the management of its works, nevertheless, if they further find that the nuisance existed as mentioned in the first prayer of the plaintiffs and were not abated by the precautions used by defendant, but still continued as in said first prayer alleged, then the jury are not to take into consideration in making up their verdict the precautions and care used by the said defendant in operating such factory if they find such. (Granted).

*Plaintiffs' Third Prayer.*—If the jury find for the plaintiffs, then, in awarding damages, they may consider the interference caused by the defendant with the uses to which the property has been put by the plaintiffs, including injury to property, expense for repairs up to the time of bringing of this suit, and also any discomfort to the plaintiffs occasioned

thereby up to the time of the bringing of this suit, but not for any injury, if they find such, occasioned by Bowen and Mercer, and not for any injury done to lot and building, thirteen feet on First street, next to the lot described in plaintiffs' first prayer and solely by Andrew Spangler. (Refused).

*Defendant's First Prayer.*—The jury are instructed that before the plaintiffs can recover under the pleadings in this case, they must believe that the fumes and gas from the factory of the defendant have occasioned substantial injury to the house owned by the plaintiffs jointly, and in determining this question the jury are instructed that they should take into consideration the locality and all the surrounding circumstances ; and that when expensive works have been constructed, which are needful and useful to the public, if they so find, that persons must not stand on extreme rights and bring actions with respect to every trifling annoyance, but must submit to the reasonable consequences of the carrying on of trades in his immediate neighborhood, which are actually necessary to trade and commerce, and in considering the question of damage to the property of the plaintiffs the jury are instructed that the plaintiffs cannot recover for any injury they might have prevented by ordinary effort and care. (Refused).

*Defendant's Second Prayer.*—The jury are instructed that even if they should find for the plaintiffs, the damages are to be restricted, under the pleadings of this case, to the actual damage done to the property, to-wit, house and stable, corner of Eighth avenue and First street, there being no evidence in the case that any other property was owned by them jointly. And the plaintiffs cannot recover, under the pleadings of this case, any damages for any personal annoyance or discomfort, or for any any injury to health, if they should so find, suffered by either of the plaintiffs or any of their family. (Granted).

*Defendant's Third Prayer.*—If the jury find that fumes and gases blow over and on the property of the plaintiffs from other fertilizer factories besides that belonging to the

defendant, then they are instructed that for any damages inflicted or caused by fumes from these other factories, the plaintiffs cannot recover in this action ; but that the plaintiffs must show, in order to recover, what part of the damage, if any, was occasioned by the defendant, and that the plaintiffs can recover only for such damage, if any, as was occasioned exclusively by the defendant.    (Granted).

The jury returned a verdict for the plaintiffs for $500.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, ROBERTS and BOYD, JJ.

*Charles Marshall* and *Edgar H. Gans,* for the appellant.

The defendant desired to go to the jury with the question whether these slight annoyances, under all the circumstances, amount to damage in such a way as to give the plaintiffs any right to recover.    This it was not allowed to do by the refusal of the defendant's first prayer.  In the defendant's first prayer were the following points :  1.  Defendant must have occasioned substantial damage.    2.  In determining this question the jury had the right to take into consideration  the  circumstances  mentioned in the prayer.    3.  The plaintiff could not recover for any injury which they might have prevented by ordinary care.    It will be observed that the prayer does not concede substantial damage, and then ask the jury to regard the surrounding circumstances as an excuse or justification, but to determine in the light of these circumstances whether any real damage has been done. This distinction in made by all the authorities.  *Comm.* v. *Miller,* 139 Penna. State, 93; *Pollock on Torts,* 366;  *Hochstrasser* v. *Martin,* 74  Hun. 338; *Hegg* v. *Licht,* 80 N. Y. 581;  *Sturges* v. *Bridgman,* 11  Ch.  Div.  865; *Dittman* v. *Repp,* 50 Md. 523; *Salvin* v. *North Branapeth Co.,* L. R. 9 Ch. App. 709; *Euler* v. *Sullivan,* 75 Md. 618; *Railroad Co.* v. *Smith,* 27 L. R. A. 131; *Lawson* v. *Price,* 45 Md. 124.

*R. R. Boarman* and *Robert Riddell Brown,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

Andrew Spangler and his wife brought an action against the Susquehanna Fertilizer Company to recover damages caused by an alleged nuisance. Judgment having been rendered in their favor, the defendant appealed.

The declaration averred that the plaintiffs were owners of two lots of ground on each of which there was a dwelling-house; that the plaintiffs and their family lived in one of the dwelling-houses, and kept a store in it, and that the other is rented to tenants from time to time; and that the defendant conducted and maintained a factory for the manufacture of fertilizers, phosphates, manures and compounds; and that from said factory from time to time there arose noxious, noisome, offensive and unwholesome vapors, smoke, and foul and disagreeable odors, and noxious gases, and were spread and diffused over and upon the lots of the plaintiffs, and upon and into the dwelling-houses erected on said lots, and caused great discomfort and annoyance and sickness to the plaintiffs and their family, and destroyed their furniture, bed-clothes and wearing apparel, and greatly corrupted and polluted the air, and rendered it deleterious to the health of the plaintiffs and their family, and took away from them the reasonable and comfortable enjoyment of the houses as places of abode, and greatly impaired and diminished the value of the dwelling-houses, and the value of the store as a place of business. The defendant pleaded that it did not commit the wrong alleged.

The houses alleged to belong to the plaintiffs, and the factory of the defendant, are situated in Canton, a large and populous village adjoining the city of Baltimore. The evidence showed that one of the lots was owned by the plaintiffs. This lot is at the corner of First street and Eighth avenue. There is no testimony in the record as to the other lot, which adjoins the first one. The evidence for the plaintiffs tended to prove the other facts averred in the declaration. The evidence for the defendant contradicted them and also tended to show that with the exception of a few

houses the entire locality where the nuisance is alleged to exist is given up to fertilizer factories, wharves, elevators and a railroad, and that the Spangler property is in close proximity to large hog-pens and manure-pits. The Court granted two prayers in behalf of the plaintiffs. The first prayer is restricted to the premises at the corner of First street and Eighth avenue, and it substantially leaves to the jury to find the truth of the evidence offered on the part of the plaintiffs, and it maintains that upon the finding of these facts the plaintiffs are entitled to recover. It does not, however, state the measure of damages. With the exception of the description of the property affected, it is a literal copy of the first prayer in *Malone's case*, 73 Md. 268, which this Court adjudged to be correct. The second prayer of the plaintiffs maintained in substance that if the nuisance was found by the jury as stated in the first prayer, the recovery would not be defeated even if the defendant used care and skill, and employed the best and most approved appliances in the management of its works. The doctrine of this prayer was laid down in *Malone's case*. At page 276 the Court said : " No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business."

The defendant offered three prayers. The Court rejected the first prayer, and granted the other two. The rejected prayer is in these words : " The jury are instructed that before the plaintiffs can recover under the pleadings in this case, they must believe that the fumes and gas from the

factory of the defendant have occasioned substantial injury
to the house owned by the plaintiffs jointly, and in determ-
ining this question the jury are instructed that they should
take into consideration the locality, and all the surrounding
circumstances; and that when expensive works have been
constructed, which are needful and useful to the public, if
they so find, that persons must not stand on extreme rights
and bring actions with respect to every trifling annoyance,
but must submit to the reasonable consequences of the car-
rying on of trades in his immediate neighborhood, which
are actually necessary to trade and commerce, and in con-
sidering the question of damage to the property of the
plaintiffs the jury are instructed that the plaintiffs cannot
recover for any injury they might have prevented by ordi-
nary effort and care." There was evidence that the gases
from the defendant's factory not only injured the physical
structure of the plaintiffs' house, but made it extremely un-
comfortable, disagreeable and unwholesome as a place of
abode and also seriously injured the business of the store.

This Court has several times had occasion to consider
the rights of a party under such circumstances. An ac-
tion for a nuisance rests on the same principles as those
which support every other action of tort. If the defendant
has committed an injury to the rights or property of the
plaintiffs he must respond in damages. In *Dittman* v.
*Repp*, 50 Md. 516, there was an application for an injunc-
tion to restrain the defendants from carrying on a brewery
on Bond street in the city of Baltimore. It was alleged
that they were using steam machinery, which produced a
loud and deafening noise, which was so disagreeable and
offensive to the complainant and his family, who occupied
adjoining premises, that with a due regard to their health
and comfort it would be impossible for them to remain in
the house. The Court quoting from LORD CHANCELLOR
WESTBURY, in *Tipping* v. *St. Helen's Smelting Company*, 11
House of Lords, 650, said: "If a man lives in a town, of
necessity he must submit himself to the consequences of

the obligations of trades which may be carried on in his immediate neighborhood, which are actually necessary for trade and commerce, also for the enjoyment of property, and for the benefit of the inhabitants of the town. If a man lives in a street where there are numerous shops, and a shop is opened next door to him which is carried on in a fair and reasonable way, he has no ground for complaint because to himself individually there may arise much discomfort from the trade carried on in that shop." It also said : " But still, as we have said, there is a limit to the discomforts and annoyances to which a party may be required to subject himself without remedy by living in a city or a manufacturing district ; and the authorities are numerous which hold that noise alone, if it be of such character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibility, may create a nuisance, and be the subject of an action at law, or an injunction from a Court of Equity, though such noise may result from the carrying on of a trade or business in a town or city." *Chappell* v. *Funk,* 57 Md. 465, was a bill in equity for an injunction to restrain and prohibit the operation of a factory for the manufacture of vitriol, sulphuric acid and other products. The facts are not stated in the report of the case. But a reference to the record on file in this Court will show that Funk owned and possessed a lot of ground in the city of Baltimore on which there were several dwelling-houses, that he occupied one of them as a place of abode, and that the greater portion of the lot was used by him as a garden in which he raised large quantities of produce, such as plants, vines, fruits and vegetables of excellent quality, and that he had been in the habit of selling them at high prices and had realized great pecuniary profit in this way ; and that immediately in the rear of his lot there was the factory in question, which was conducted, controlled and operated by the defendants, and that in the course of the business conducted by them large quantities of smoke, and of noxious, noisome, offensive and un-

wholesome vapors and gases were produced and emitted from the said factory, and that the smoke came over and upon Funk's garden and dwelling-house, and that offensive smells from the factory pervaded the dwelling-house and garden, and that noxious and unwholesome gases were diffused over and upon the garden and throughout the dwelling-house ; and that these causes killed and destroyed his plants, flowers and vegetables and prevented Funk from cultivating his garden successfully and profitably, and inflicted great pecuniary loss and injury upon him, and that the noxious vapors and gases corrupted and polluted the air and were greatly deleterious to the health of his family, and greatly incommoded and annoyed them, and took away from them all reasonable comfort in the occupation of their home.    This Court held that it was very clear that the averments in the bill of complaint were quite sufficient to warrant the granting of relief by injunction.    If there could be any doubt of the reason for the decision in this last mentioned case, and in *Dittman's case*, it will be entirely cleared up by what was said in *Adams* v. *Michael*, 38 Md. 123, referred to in *Dittman's case*, and made the basis of its decision.    In *Adams* v. *Michael*, the Court quotes with approval the words of LORD ROMILLY, in *Crump* v. *Lambert*, L. R., 3 Equity Cases, 409.    His Lordship says : " The law on this subject is, I apprehend, the same whether it be enforced by action at law or by bill in equity.    *   *   * There is, I apprehend, no distinction between any of the cases, whether it be smoke, smell, noise, vapors or water, or any gas or fluid.    The owner of one tenement cannot cause or permit to pass over, or flow into his neighbor's tenement any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighboring tenement, or so as to injure his property."    He also says :    " The real question in all the cases is the question of fact, viz., whether the annoyance is such as materially to interfere with the ordinary comfort of human existence.    This is what is established in *St. Helen's*

*Smelting Company* v. *Tipping*, 11 H. L. Cases, 642." Let us now refer to the *St. Helen's case*, which has always been considered a high authority by this Court. In that case the defendant was sued for damage alleged to have been caused by smelting works used on land near to the dwelling-house and lands of plaintiff. It was in evidence that the whole neighborhood was studded with manufactories and tall chimneys, that there was some alkali works close by the defendant's works, that the smoke from one was quite as injurious as the smoke from the other, that the smoke of both sometimes united, and that it was impossible to say to which of the two any particular injury was attributable. The fact that the defendant's works existed before the plaintiff bought the property was also relied on. In the House of Lords the Lord Chancellor said that " the submission which is required from persons living in society to that amount of discomfort which may be necessary for the legitimate and free exercise of the trade of their neighbors would not apply to circumstances, the immediate result of which is sensible injury to the value of the property." And speaking of an argument made in behalf of the defendant that the whole neighborhood where the smelting works were carried on was more or less devoted to manufacturing purposes of a similar kind, and that it was consequently a fit place for such a business, he said : " That is not the meaning of the word ' suitable,' or the meaning of the word ' convenient,' which has been used as applicable to the subject. The word ' suitable ' unquestionably cannot carry with it this consequence, that a trade may be carried on in a particular locality, the consequence of which trade may be injury and destruction to the neighboring property." LORD CRANWORTH said : " It is extremely difficult to lay down any actual definition of what constitutes an injury, because it is always a question of compound facts, which must be looked to see whether or not the mode of carrying on a business did or did not occasion so serious an injury as to interfere with the comfort of life and enjoyment of property."

We have considered at a length which is perhaps unnecessary the reasons and authorities, on which the opinion of this Court is founded on questions of the character presented in this case. We have done so, because we perceived from the argument that the principle was very important to the appellant in this case. We have not meant, however, to imply any dissatisfaction with the decision in *Malone's case* (73 Md. 268), in which this same Fertilizer Company was appellant. That decision was approved in *Euler* v. *Sullivan*, 75 Md. 616 ; and we have no doubt of its correctness. In the opinion it was said: " So we take the law to be well-settled that, in actions of this kind, the question whether the place where the trade or business is carried on, is a proper and convenient place for the purpose, or whether the use by the defendant of his own land is, under the circumstances, a reasonable use, are questions which ought not to be submitted to the finding of the jury." In the rejected prayer on the part of the defendant it was proposed to instruct the jury in determining the question of substantial injury to the plaintiff's house, that they should take into consideration the locality and surrounding circumstances, and other matters which appear in the prayer which we have already quoted in full, and which need not be repeated here. The jury are not told what exculpatory inference they would be at liberty to draw from these matters after they had taken them into consideration. But they were to consider them in determining whether the injury was substantial or not. Manifestly none of them could have any tendency to show whether the injury to the house was great or small. One of the plaintiffs testified that the house had entirely " gone to rack ;" that the gases had affected the paint on the house, and made the shingles on the roof loose by eating the nails ; and that the tin roof on the stable had been eaten up. Both of the plaintiffs testified that the gases from the factory made living in the house extremely uncomfortable and unhealthy. The wife testified that customers had ceased coming to the store on account of the gas and fumes and that they had

nearly broken it up.  This evidence, if believed by the jury, would justify them in finding substantial injury to the rights of the plaintiff without any regard whatever to the locality. It is not in any manner countervailed or weakened by any of the matters suggested for the consideration of the jury in the rejected prayer.   The proper question for the jury was whether the operation of the factory interfered with the reasonable and comfortable enjoyment by the plaintiffs of their property ; or occasioned material injury to the property itself.   The finding of these facts depended on the evidence applicable to them, and not on locality or any other matter embraced in the rejected prayer.

*Judgment affirmed.*

(Decided January 4th, 1898).