THOMAS B. TURNER *vs.* ISAAC N. KING, CLAR-
ENCE T. HUTCHINS, The County Com-
missioners of Calvert County.

*Municipal corporations*: *use of public property; injunction by
taxpayers.*

To justify an injunction to restrain an existing or threatened
nuisance to a dwelling house, the injury must be shown to be
of a character to diminish materially the value of the prop-
erty as a dwelling and seriously interfere with the ordinary
comfort and enjoyment of it. It must appear to be a case of
real injury, and one for which a court of law would award
substantial damages.                                    p. 407

The County Commissioners of Calvert County had leased part
of the public square to certain parties, privileged to erect and
maintain thereon a frame building. A bill was filed by the
appellant, who owned and occupied a hotel some 75 feet dis-
tant, across the public road from the lot, praying that the
lessees be enjoined from erecting a building there, because it
would deprive him and his guests as well as other citizens of
the county of the comfort and use of the ground occupied by
said building, etc.; and that the erection of the building would
seriously interfere with his comfort and cause him material
injury to his property by diminishing its value as a dwelling,
etc.; that the erection of the building would not only inter-
fere with his reasonable comfort, but as a taxpayer, etc., he
would be restrained from the free use of the property which
belonged to the county and the citizens thereof, etc. The alle-
gations of the bill were not properly supported by evidence;
the testimony was clear that the proposed building would
interfere but little with the public use of the grounds. *Held,*
that the plaintiff could not maintain his bill on the ground
that the erection of the building would result in damage to
his property and his comfortable occupation and enjoyment
of it.                                                  p. 408

A private citizen can not restrain public wrongs, unless he alleges and proves a damage to himself different in character from that sustained by the public generally; nor can taxpayers restrain official acts upon the mere ground that they are *ultra vires.* p. 408

To warrant a court in issuing an injunction in such a case, it must be informed by the bill itself and its accompanying exhibits of every material fact constituting the case of the plaintiff, in order that it may be seen whether there is just and proper ground for the application of so summary a remedy. p. 409

A taxpayer can not invoke the restraining power of a court of equity against a municipal corporation except it be shown, by proper averments in the bill, that the municipal corporation or its officers are acting *ultra vires* or assuming or exercising a power over the corporate property or funds which the law does not confer upon them, and that such unauthorized acts may affect injuriously the rights and property of the parties complaining. p. 410

*Decided February 2nd, 1912.*

Appeal from the Circuit Court of Calvert County (BEALL, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John B. Gray,* for the appellant.

*John B. Bunting,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant is a resident and taxpayer of Calvert county, and is the owner of a hotel in Prince Frederick, in that county, called the Hotel Calvert, in which he resides with his family and in which he entertains such guests and customers as may present themselves.

The ground upon which the hotel is erected borders on the line of a tract of land owned by Calvert county and which is under the control of the County Commissioners of that county. This tract is known as the "Court House Green or Lot," and was acquired by the county under the authority of the Act of 1725, Ch. XI.

There is a county road in front of the hotel property of the plaintiff, and across this road at the distance of about seventy-five feet from the hotel and on the Court House lot there is a grove of fine shade trees, affording," as the bill alleges, "shade to the guests of the hotel in summer, and are the only trees which afford any protection to the guests of the hotel in the heated season."

On the 25th of April, 1905, the County Commissioners of Calvert County leased a part of the Court House lot to Isaac N. King and Charles T. Hutchins, their personal representatives, and assigns for a period of ninety-nine years. The lessees covenanted to pay one dollar on the 25th of April in each and every year, and they were granted by the lease the privilege to build and maintain on the leased lot a frame building.

This lease was not recorded until the 23rd day of May, 1911. The lot leased lies across the county road mentioned, and directly in front of the plaintiff's hotel and in the grove of shade trees referred to. The lessees began the erection of a building upon the lot, and had progressed with the construction to the point of placing the rafters and upper joints in place, when the bill in this case was filed against them and the County Commissioners of Calvert County praying: First, that a preliminary and perpetual injunction be issued against King and Hutchins enjoining them from erecting and building upon the lot so pretended to be leased to them, and restraining them and the County Commissioners of Calvert County and each of them from doing any act or thing or exercising any power or authority under or by virtue of said pretended lease; second, that said lease be

declared null and void and of no valid force or effect; third, for further and other relief.

The grounds upon which this relief was asked are stated in the eighth, ninth and tenth paragraphs of the bill, which are as follows:

"8. That the erection of said building will practically destroy the shade trees aforesaid and deprive your orator and his guests of the comfort thereof, and will also deprive your orator and other citizens of Calvert county of the use of the ground occupied by said building and the comfort of the shade afforded by the trees in the heated season.

"9. That the erection of said building will interfere seriously with your orator's reasonable comfort and occasion a material injury to his property by diminishing its value as a dwelling and hotel.

"10. That the erection of said building will not only interfere with your orator's reasonable comfort and occasion a material injury to his property, but as a taxpayer and citizen of Calvert county he will be restrained from the free use and enjoyment of the property which belongs exclusively to Calvert county and the citizens thereof and which was bought by the county for public and not for private uses."

The answer of the lessees denied that the erection and maintaining of the building would destroy or in any manner injure the shade trees growing on the Court House lot, or that it would deprive the plaintiff, or any one else of the comfort thereof. It averred that the Court House lot contains about three acres of ground, and that more than two acres thereof are unoccupied or used except as public grounds surrounding the Court House and other buildings, and that the use of the small lot of ground leased would cause no material inconvenience or injury to the citizens of the county, or materially restrict them in the use of the public grounds. It further denied that the erection and maintaining the building would seriously interfere with the

reasonable comfort or occasion a material injury to the plaintiff's property or diminish its value, or materially interfere with the plaintiff's reasonable use and enjoyment of the public grounds or the exercise of his right therein. No answer was filed by the County Commissioners. A preliminary injunction was issued on the bill. The lessees moved to dissolve the injunction. This motion was heard upon bill, answer and testimony, and from the order of the Court dissolving the injunction the plaintiff had appealed.

It is settled by a long line of decisions in this State and elsewhere that "to justify an injunction to restrain an existing or threatened nuisance to a dwelling house, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it. Unless such a case is presented a Court of Chancery does not interfere. It must appear to be a case of real injury, and where a Court of law would award substantial damages. *Walter* v. *Selfe,* 4 DeG. & Sin. 323; *Jackson* v. *Newcastle,* 33 L. J. Ch. 698; *Soltan* v. *DeHeld,* 2 Sin. N. S. 159; *Kerr on Inj.* 350. Where, however, such is shown to be the case, the power of the Court is clear, and it will *interpose* by injunction." *Adams* v. *Michael,* 38 Md. 123; *Dittman* v. *Repp.,* 50 Md. 516; *Woodyear* v. *Schaefer,* 57 Md. 1; *Euler* v. *Sullivan,* 75 Md. 616; *Susquehanna Fertilizer Co.* v. *Spangler,* 86 Md. 562; *Bonaparte* v. *Denmead,* 108 Md. 174.

The allegations of the bill that the erection and maintenance of the proposed building would materially diminish the value of the plaintiff's property and seriously interfere with the reasonable use and comfortable enjoyment of it by him and his family and guests are wholly unsupported by the evidence. The plaintiff did not testify in his own behalf.

None of the shade trees are on his property, and neither he nor the guests of his hotel, or his family, could derive any benefit from the shade of these trees without crossing the public highway to the Court House lot, a distance of

about seventy-five feet, where he and they might enjoy the shade in common with all the other citizens of Calvert county.

The testimony is also clear that the proposed building would interfere very little with the public use of the grounds, and that the enjoyment by the public of the shade trees would be but slightly interfered with.

The testimony shows that there are three shade trees near the proposed building. One about three feet therefrom, one about eight feet and the other about ten feet, and that these trees would be injured only to the extent of cutting off a few small limbs to give place to the roof. There is no evidence that the value of the plaintiff's property would be diminished as alleged and it is shown that no material inconvenience, interference or discomfort to the public would result from the erection of the building.

It is, therefore, evident that the plaintiff cannot maintain this bill upon the alleged ground that the erection of the proposed building would result in serious damage to his property and to his comfortable enjoyment and occupation of it.

Assuming, without so deciding, that the County Commissioners had no power to make the lease, and that the erection of the building upon the public property would constitute a public nuisance, since it appears by the evidence in the case that the appellant would suffer no damage different in kind or degree from that sustained by the public at large, he has no standing in a Court of equity to maintain his bill.

The rule is well settled that private citizens can not restrain public wrongs, unless they allege and prove damage to themselves different in character from that sustained by the public generally, nor can taxpayers restrain official acts upon the *mere* ground that they are *ultra vires.* *Houck* v. *Wachter,* 34 Md. 265; *Crook* v. *Pitcher,* 61 Md. 510, and *other cases.*

In *Bryant and others* v. *Logan and others,* 56 W. Va. 141, taxpayers sought to restrain the use of part of the city park

of Petersburg which the defendants had leased from the city. The Court held, citing many authorities, that citizens and taxpayers, simply as such, stating no special harm to themselves different from that sustained by others, had no standing to file a bill. This is also the Maryland rule.

In *Davidson and others* v. *Baltimore City,* 96 Md. 509, where residents and taxpayers of the city asked for an injunction to restrain the Mayor and City Council and the Board of School Commissioners from doing certain things which the plaintiffs alleged to be in violation of law, this Court, after sustaining the power of the city to do the things complained of, said: "But apart from all that has been said, it seems to be clear that the complainants, 'suing as taxpayers,' have no standing in Court to maintain this bill. The charge is that the Board of School Commissioners are about to change the use of the building from that of the English-German School No. 1, to that of a colored high school. It perhaps may not be difficult to perceive how the establishment and maintenance of a colored school in the building might result injuriously to the property in the immediate vicinity. But the complainants do not charge that their property will be specially injured by the proposed change of use. The scope of the averments of the bill in this respect is, that all of the property in the city will be injured; a conclusion very difficult to reach. If the proposed change of use will in fact specially affect the complainants either as to themselves or to their property, it should have been so stated in the bill. That was necessary to complete the jurisdiction of the Court. To warrant a Court in issuing an injunction in such a case 'it must be informed by the bill itself, and its accompanying exhibits of every material fact constituting the case of the plaintiff, in order that it may be seen whether there is a just and proper ground for the application of so summary a remedy." *Lamm* v. *Burrell,* 69 Md. 274.

The taxpayer can not invoke the restraining power of a Court of equity unless it be shown by proper averments in

the bill that the municipal corporation or its officers are act-
ing *ultra vires* or assuming or exercising a power over the
corporate property or funds which the law does not confer
upon them, and that "such unauthorized acts may affect
injuriously the rights and property of the parties complain-
ing." *St. Mary's Industrial School* v. *Brown,* 45 Md. 327.

Public wrongs are not to be redressed at the suit of indi-
viduals who have no other interest in the matter than the
rest of the public. To give them a standing in a Court of
equity, they must allege and show that by the wrong com-
mitted they suffer some special damage, or that they have
"a special interest in the subject-matter distinct from that
of the general public." *Mayor, etc.,* v. *Keyser,* 72 Md. 108;
*Mayor, etc.,* v. *Gill,* 31 Md. 395.

For the reasons stated the order of the lower Court will
be affirmed.

*Order affirmed, with costs.*