## MAYOR AND CITY COUNCIL OF BALTIMORE et al.

### vs.

## BOARD OF HEALTH FOR BALTIMORE COUNTY.

*Nuisance—Disposition of City Garbage—Bill by County Board of Health.*

The Circuit Court for Baltimore County has jurisdiction to entertain a bill by the board of health of that county, to restrain a nuisance directly affecting the health of citizens of the county, although the defendants are non-residents thereof, Code Public Local Laws, art. 3, sec. 247, requiring such board of health to investigate nuisances affecting the public, and authorizing the board to apply to the court or to any of its judges for an injunction to restrain such a nuisance.        pp. 213-216

When a bill by the health officers of a county against a city and a private individual alleged that, under a contract entered into between the defendants, during a period of ninety days over eleven thousand tons of garbage were to be hauled from the city in scows, and spread over land in the county, within a few miles of where about thirteen thousand people live; that the garbage would prove a source of disease and a menace to health, breeding billions of flies and other noxious insects, and contaminating springs and water supplies, and there was filed with the bill as an exhibit a letter from the deputy state health officer to the same general effect, *held* that the defendants should be required to answer.        pp. 216-218

Acts 1908, ch. 205, prohibiting the erection of any garbage reduction plant within nine miles of a certain point on the Patapsco River does not apply to the mere unloading of garbage on wharves and the spreading thereof over land for fertilizer purposes.        p. 218

In order to justify the continuance of an injunction against a city to prevent it from transporting the garbage of the city to a county, and there spreading it over land for fertilizer purposes, on the ground of the danger to the health of the people of the county, such danger must not be merely speculative, but must be established with reasonable certainty.        p. 220

*Decided June 28th, 1921.*

Appeal from the Circuit Court of Baltimore County (DUNCAN, J.).

Bill by William F. Coghlan and others, constituting the Board of Health for Baltimore County, against the Mayor and City Council of Baltimore, and William F. Huse, to enjoin the maintenance of a nuisance. From a decree overruling demurrers to the bill, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Allen A. Davis, Assistant City Solicitor*, with whom was *Roland R. Marchant, City Solicitor*, on the brief, for the appellants.

This is a transitory suit, no property being involved, but merely the health of residents and visitors in the neighborhood. *Gunther* v. *Dranbauer*, 86 Md. 6; *Crook* v. *Pitcher*, 61 Md. 510; *Phillips* v. *Baltimore*, 110 Md. 431; 1 *Poe, Pl. & Pr.*, sec. 53.

Injunctions operate *in personam*. *Longley* v. *McGeoch*, 115 Md. 187; *Columbia, etc., Dredging Co.* v. *Morton*, 8 A. & E. Ann. Cas. 512, and note; 22 *Cyc.* 906-909.

This suit being transitory, the Circuit Court for Baltimore County has no jurisdiction, since neither of the defendants reside in Baltimore County (*Omo* v. *Dorsey*, 93 Md. 74; *Longley* v. *McGeoch*, 115 Md. 182; *Code*, art. 75, sec. 147): the Mayor and City Council of Baltimore cannot be sued in a transitory action in a court not within its own territorial limits. *Phillips* v. *Baltimore*, 110 Md. 431.

*Edward H. Burke*, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County overruling demurrers to a bill in equity, and directing the issuance of an injunction against the Mayor and City County of Baltimore and William F. Huse, a resi-

dent of Baltimore City.    The plaintiffs are the Board of County Commissioners of Baltimore County and *ex officio* the Board of Health for that county, in which last named capacity the bill was filed.    It alleges that "the Mayor and City Council of Baltimore and William F. Huse have entered into a contract whereby for a period of ninety days from January 5th, 1921, or thereabouts (the exact date not being known to the plaintiffs) all garbage collected in the City of Baltimore will be loaded on scows and said scows hauled or towed to Huse's wharves on Bear Creek in Baltimore County, where said garbage will be unloaded"—the city having reserved the right to terminate the contract on fifteen days' notice.    It is further alleged that the garbage "is the refuse from the kitchens of Baltimore City and consists of animal and vegetable matter in various stages of decay and putrefaction"; that the garbage to be collected and sent by scows to the wharves under said contract will average at least 128 tons per day, or a total during the ninety days of at least 11,520 tons; that the said Huse has not any means or machinery whatsoever for the scientific or other reduction of said garbage or for its sanitary disposal, and that this fact was well known to the city at the time of entering into the contract; that "it is proposed by the said Huse, with the assent of the said Mayor and City Council to spread said garbage or to sell as much as he can for spreading, over the territory and land of Baltimore County, adjacent and near his said wharves for fertilizer purposes."

It is also alleged that the said wharves are well within nine miles from Lazaretto Lighthouse on the Patapsco River, and are located about two miles from the eastern city limits of Baltimore and about two and a half miles from the village of Dundalk and about the same distance from the village of Sparrows Point; that Dundalk is an unincorporated village in Baltimore County of a population of approximately fifteen hundred, is a modern town with concrete streets and public water and sewerage systems; that Sparrows Point is

an unincorporated village in said county, having a population of approximately ten thousand, with improved streets and sewerage system; that about the wharves are small and large truck farms, shore-houses and bungalows; that the small village in Baltimore County known as Edgemere is less than two miles away and near said wharves are modern and improved highways, much frequented by the public.

It is further alleged that in the summer time especially, and during the colder weather also, many persons, men, women and children, visit the numerous shores and private pleasure resorts along Bear Creek and other creeks making off from it and the Patapsco River in the vicinity of these wharves, and the wharves and the farm lands adjacent and near them, over which it is proposed to spread the garbage, are not isolated, but are in a more or less thickly settled, thriving and prosperous community, close to several villages in Baltimore County and various shore properties and private pleasure resorts.

Strong allegations are made in considerable detail as to the effect that the garbage will have on the comfort and health of the people, some of which will be referred to later, but the substance of them is, that it will result in being a great nuisance, likely to produce diseases, and causing great discomfort.

The two defendants filed separate but similar demurrers to the bill. The first reason assigned is that it appears on the face of the bill that neither of the defendants is resident of Baltimore County, and no facts are shown which give the court jurisdiction over them.

In the case of *Ballimore City* v. *Sackett*, 135 Md. 56, the plaintiffs were property owners and residents of Anne Arundel County and the defendants were non-residents of that county. The object of that bill was to restrain the defendants by injunction from disposing of the garbage from the City of Baltimore on a farm known as the Jubb farm, owned by the city in Anne Arundel County. The demurrer to the

bill by the city was substantially the same as in this case, and, as here, the demurrers of the other defendants were similar, and the case came before us on an appeal from an order over-ruling them.   It was averred in that bill that the removal and transporting by the city to the Jubb farm of the garbage of the city, and then causing it to be reduced in a temporary reduction plant, or fed to pigs, would result in a nuisance and destroy the value of property holdings in that section, and render the property unmarketable, etc.   It was there held by us that "the Circuit Court for Anne Arundel County had jurisdiction to entertain a bill for an injunction to restrain a nuisance, or a threatened nuisance, directly affecting property in that county, although the defendants are non-residents of the county."

While that case differs from this in the fact that there were property rights of the plaintiffs involved, which under the authorities established the jurisdiction of the Circuit Court for Anne Arundel County, it would seem to be an illogical distinction to make, to hold that, although a court of equity could give relief by injunction to property owners whose property is or may be affected by a nuisance, it cannot give it to a public body seeking to protect and guard the public health from a nuisance committed, or about to be committed, within the jurisdiction of that court.   It is true that an injunction operates *in personam,* but it did in the *Sackett Case,* and the jurisdiction was sustained—not because it was a proceeding *in rem,* but because the *res* which the alleged nuisance would affect was within the jurisdiction of the court, and entitled to the protection of that court.   Can it be said that the health of the community is of less importance and should not have as much protection as the property of its residents?   In addition to the many provisions intended to preserve and protect the health of the people, as found in article 43 of the Code of Public General Laws, and the amendments thereto, article 3 of the Code of Public Local Laws, entitled "Baltimore County," has nearly fifty sections

under the sub-title "Health and Sanitation."   Section 247 of
the latter provides that the Board of County Commissioners
of Baltimore County shall *ex officio* constitute a local board of
health for that county, and large and important powers are
conferred on it.   They are by that section required to "in-
quire into and investigate, or cause to be inquired into and
investigated, all nuisances affecting the public health, comfort
or property of the citizens of said county, or any city, town
or village therein; and are authorized and empowered by in-
formation or petition, filed in the name of such board, to
apply to the judges or any judge of the circuit court for
such county, in term time or vacation, for an injunction to
restrain and prevent such nuisance, no matter by whom or
what authority committed; and further, they shall have full
power and authority to preserve the health of the county, to
prevent and remove nuisances, and to prevent the introduc-
tion of contagious diseases within said county."

In *Baltimore* v. *Sackett, supra,* JUDGE BRISCOE referred
with approval to 29 *Cyc.* 1237, where it is said: "A suit to
abate or restrain a nuisance must be brought in the county
or district where the nuisance is situated, and must be tried
there, unless a change of venue is granted by the court."
That is in accord with other authorities on the subject, and
as the statute quoted above in terms gives the plaintiff the
authority and power to apply to any judge of the Circuit
Court for Baltimore County for an injunction to restrain
and prevent such nuisance, it is difficult to undertsand how
it can be said that the lower court did not have jurisdiction
to grant relief against the alleged nuisance set out in the bill,
although both defendants were non-residents of the county.
The bill was filed January 18th, 1921, and it alleges that
the defendants had entered into the contract "whereby for a
period of ninety days from January 5th, 1921, or there-
abouts  *  *  *  all garbage collected in the City of Balti-
more will be loaded," etc., and that it is, with the assent of
said Mayor and City Council, to be spread on the territory

and land of Baltimore County adjacent to and near the wharves. Those about to engage in what is claimed to be such a nuisance as would justify relief in equity might reside in a remote part of the State, and might come to Baltimore County with their scows loaded with garbage and unload them, or begin to unload them, yet the County Commissioners, acting as a board of health, could not enjoin them until they could arrange to have a bill filed, process issued and served at a remote part of the State, if the appellant's position as to the jurisdiction of the Circuit Court for Baltimore County is well taken—notwithstanding the Legislature has authorized the board of health to file a petition for an injunction *in that court* or before one or more of its judges. That ought not to be, and we do not think it is the law applicable to the circumstances of this case, as alleged in the bill.

The next question is, then, whether the bill made out a case for the relief prayed. This is one of the delicate cases courts are sometimes called upon to decide. On the one hand, we have involved what is alleged to be the health of the communities near where the garbage was to be placed, and on the other hand we have a large city with many tons of garbage to be disposed of, and the comfort, safety and health of its citizens require the garbage to be collected and disposed of in some proper way. But this bill was not only filed by the County Commissioners of Baltimore County, who are *ex officio* the board of health for that county, in which capacity this suit was brought, but with the bill there is filed as an exhibit a letter from the deputy state health officer of that district, addressed to the County Commissioners, in which he says that he believes that if the contract between the city and Huse is carried out, it will produce a nuisance, dangerous to public health, productive of physical discomfort, and otherwise injurious to a population of thirteen thousand people, and he called upon them to apply for an injunction. The State Board of Health is, by section 2 of article 43, author-

ized to apply to the judges or any judge of the circuit court of the county where a nuisance exists—practically using the same language as is in the local law above quoted. The demurrers, of course, admit the facts alleged in the bill which are well pleaded, and if the results of disposing of the garbage at the place and in the way alleged will be what the bill alleges, there were undoubtedly impending dangers of very serious consequences, from what it was alleged was going to be done. It is not possible for courts to always know in advance what the consequences of acts complained of will be, if permitted, but when such facts as are in this bill are admitted, as they are by the demurrers, it would scarcely be worth while for the Legislature to authorize and empower either a local board of health or the State Board of Health to apply for an injunction to restrain and prevent such alleged nuisances, if the parties complained against can simply demur, and not be called upon to answer.

It may be that an answer or answers and testimony will present the case in a very different light from what it now appears to be, but when the city admits, as its demurrer does, that under the contract referred to 11,520 tons of garbage were to be hauled in scows, then unloaded on these wharves, to be spread over the land adjacent and near the wharves, within a few miles of where about thirteen thousand people live, besides many others having occasion to go there, and that it will prove a source of disease and pestilence and a menace to the health of the people, that the garbage will continue to ferment and decay and "will become a breeding place for billions of flies and other noxious insects that are carriers of disease, and will result in the spreading of disease, principally typhoid and kindred sicknesses and the contamination of springs and water supplies," it would seem that the parties who are alleged to cause such conditions ought at least to be required to answer. Especially is that so when the allegations are made by the health officers in charge of the territory alleged to be affected, and more particularly when those officers

are authorized by statute to apply for the remedy they now ask. Nor should we lose sight of the allegation in the bill that until recently the Mayor and City Council disposed of the garbage on a farm owned by it in another county, which' has a water front, wharves specially adapted to the unloading, storage and handling of garbage, and that the contract with Huse was the outgrowth of a desire on the part of the Mayor and City Council to dispose of the city garbage as cheaply as possible. Of course, such a desire is commendable, if it can be done without injury to others or the public, but not if at the expense and comfort, possibly lives, of others.

We must assume that the plaintiffs were acting in good faith and in the discharge of what they believed to be their duty as public officers, and not to embarrass the city or unnecessarily interfere with its officers in discharging their duty to the public. As the period of ninety days referred to in the bill, as the length of time of the contract, has expired, and as the summer is here, there need be no speculation as to what might be, but there can be proof of what the results have been, are now, and are likely to be.

The point made in the bill that these wharves are within the express prohibition of Chapter 205 of the Acts of 1908, prohibiting the erection of any garbage reduction plant within nine miles from the Lazaretto Lighthouse on the Patapsco River, does not seem to us to be well taken. We do not understand this to be "a garbage reduction plant" within the meaning of that statute. One allegation made in the bill is that the defendant, Wm. F. Huse, has not any means or machinery whatever for the scientific or other reduction of said garbage, or for its sanitary disposal.

We have not overlooked the well-settled doctrine as to what are spoken of as threatened and not existing nuisances. This court has often been called upon to note the distinction. The leading case of *Adams* v. *Michael*, 38 Md. 123, has frequently been cited, and the principle there announced applied to the circumstances of cases which have since been

before us.   In *Hamilton Corporation v. Julian,* 130 Md. 597,
JUDGE BRISCOE, speaking for the Court, quoted from *Adams
v. Michael,* and cited a number of cases, amongst them *Wiley
v. A'Hearn* (Ky.) 18 S. W. 530, and said: "The court held
that in similar cases a party is not required to wait until the
injury is inflicted.  The object of the writ is preventive and
it wards off the injury.  The case must be a clear one, but if
the danger be probable and threatening and likely to ensue,
the aid of the court may be invoked."  The case in 130 Md.
only involved the serious annoyance and physical discomfort
of persons in the neighborhood, and was not against the city,
while this is alleged to involve the health of a community of
considerable size, the case being instituted at the instance of
the health authorities.

The case of *Baltimore v. Fairfield Imp. Co.,* 87 Md. 352,
is a very instructive one, and many things are there said
which are very applicable to this case.  The right of the city
to establish, both within and beyond its limits, hospitals and
pest houses for the isolation and treatment of contagious and
infectious diseases, was fully recognized, but we affirmed a
decree granting an injunction to prevent the city from plac-
ing and keeping a woman afflicted with leprosy on a twenty
acre tract of land, owned by the city and adjoining property
of the Fairfield Improvement Company.   Amongst other
things, CHIEF JUDGE McSHERRY said: "The right to locate
the pest-house does not carry with it or include the right to
locate it in a place where other persons would be exposed to
the contagion and disease."  Again: "The mere power to
erect and maintain hospitals and pest-houses does not imply
or include the further power to erect and maintain them in
such a way or at such a place as will cause injury to others."
That opinion has so much in it that is applicable to a mu-
nicipal corporation having authority to do something but
which does it in such a way or at such place as to make it
liable, that we might quote more from it but will not do so.

In *Taylor* v. *Baltimore,* 130 Md. 133, we considered cases where cities and public service corporations were involved, some where the distinction was pointed out in dealing with the rights of cities and those of other corporations, and others in which the different remedies, injunctions and suits at law were considered. The proper rule undoubtedly is to leave to injured persons their remedies for damages when that affords ample relief, and not tie up municipalities by injunctions when that can reasonably be avoided. In this case we have plaintiffs who represent the health of the public, and one of their statutory duties is to prevent nuisances, when that can be done.

In order to justify the continuance of an injunction against the city in this case, there must be clear and positive evidence calling for such interposition of a court of equity, and the danger to the health of the people of the county must not be merely speculative but established with reasonable certainty, but, as the case stands now, we feel that the defendants should be required to answer. The decree of the lower court will be affirmed, but the cause will be remanded and the lower court is directed to allow the defendants to file an answer or answers within such reasonable time after the mandate is received as that court may allow.

> *Decree affirmed and cause remanded for further proceedings as authorized in this opinion, the appellant to pay the costs in this court, those in the lower court to abide the final result.*

JUDGE STOCKBRIDGE dissenting.