# NORTHERN CENTRAL RAILWAY COMPANY ET AL.

## *vs.*

## OLDENBURG & KELLEY, INCORPORATED.

*Nuisances: smoke and gases; when injunction will not be granted; damages at law; overflow of land by water. Roundhouses of railroads.*

For a railroad to allow steam or hot water from its round-house to flow over the land of an adjoining property owner, so as to make a deep ditch or ravine on said land, and by under-mining the supporting soil to wash away a bridge, is such a taking of property to entitle the party injured to damages, under the constitutional provision against the taking of private prop-erty for public use without compensation          p. 243

And to restrain such injury relief may be had by injunction.
p. 244

Allowing smoke and noxious fumes to be discharged into the air to such an extent as to destroy the grass and trees on adjoin-ing property, as well as to destroy certain metallic parts of the houses and to affect the health and respiratory organs of those there dwelling, and to render the houses untenantable, is ground for an action at law to recover damages, even though this be held not to constitute an actual invasion or taking of the land.
pp. 247, 250

Upon application for an injunction to abate a nuisance or injury to real estate by smoke, noxious fumes, noise, etc., courts do not regard trifling inconveniences; in determining the ques-

tion of nuisance in such cases the locality and all the surrounding business should be taken into consideration.    p. 244

Where expensive works have been erected and carried on, which are useful and needful to the public, persons must not stand on extreme rights and bring actions in respect to every trifling annoyance.    p. 244

But where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or in a manner to occasion material injury to the property itself, a wrong is done for which an action will lie.    p. 244

A roundhouse that is necessary for the operation of a railroad, and that is constructed under its charter powers, which is not alleged to be so located or constructed in a manner as to amount to negligence, nor to be so negligently operated as to emit smoke and noxious fumes, etc., which by proper care and diligence could be eliminated, was *held,* not to be a public nuisance entitling the complainant to an injunction.    p. 251

On an application for an injunction a demurrer to the whole bill. should be overruled, if part of the matters complained of call for equitable relief, although as to others the remedy is at law.    p. 251

*Decided January 14th, 1914.*

Appeal from the Circuit Court for Baltimore County. (In Equity.)   (HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BUBKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Shirley Carter* (with whom were *Bernard Carter & Sons* on the brief), for the appellant.

*Thomas G. Hayes* and *John Holt Richardson,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

As alleged in its bill, the appellee, plaintiff below, a body corporate, was, on the 23rd day of March, 1910, the owner in fee simple and in possession of a large tract of land at Highlandtown, in the Twelfth Election District of Baltimore County.   On that day the appellee company conveyed a portion of said lot of land to one Samuel C. McFarland, who on the 2nd day of December, 1910, conveyed the same to the appellants, the Northern Central Railway Company and the Philadelphia, Baltimore and Washington Railroad Company, and these companies together with the Pennsylvania Railroad Company, the other appellant named, constructed thereon a large building known as a roundhouse, which is described in one of the plaintiff's exhibits filed with its bill as the place where the locomotives, after they have made a trip, are brought for the purpose of cleaning the grates, tubes and front end of the boilers, and where, after the boiler has been cleaned, the engine is prepared for a new run by starting a new fire in the engine.

It is alleged by the plaintiff that it "at large cost to itself, had improved, before and after the building of said roundhouse and its use as aforesaid, its land by handsome dwelling houses, many of which it leased or rented to sundry persons and retained the ownership of the other of said houses to itself," and "that continually since the construction and use of said roundhouse by the defendants there has been discharged from the smoke stacks of said roundhouse, coming from the locomotive engines, some twenty in number, smoke and noxious fumes destructive of plaintiff's grass, vegetable matter, and trees, as well as destructive of parts of said houses of the plaintiff, and cotton fabrics of tenants,

when exposed to said fumes, and in addition to the aforesaid injury to property, said noxious fumes affect the health of tenants of plaintiff, when exposed to said fumes, causing coughing and inflammation and irritation to the respiratory organs. * * * That the effect of said smoke and noxious fumes proceeding from said roundhouse of defendants is to destroy the value of said houses as dwellings, and to render them untenantable, of no value as dwelling houses. That the said public nuisance caused by said smoke and noxious fumes as aforementioned is continuous when the wind blows from a certain quarter, and inflicts on the plaintiff and its tenants the special damages, as aforesaid." That the condition of the atmosphere produced by the said smoke and noxious fumes discharged from the roundhouse of the defendants "render the property, the land improved and unimproved, of the plaintiff adjacent to said roundhouse, valueless, untenantable and without market value."

It is also alleged by the plaintiff that "in addition to the continuing nuisances" aforesaid, "the defendants caused, since the construction of said roundhouse, continually to flow upon the said land of the plaintiff, from its roundhouse, a stream of hot water, which has made a deep ditch or ravine in said land of the plaintiff and by undermining the support of the bridge of the said land of the plaintiff has washed away said bridge."

To correct the alleged wrongs complained of, the plaintiff filed its bill, alleging therein, in substance, the facts as we have stated them, and with it filed eight exhibits. The first, second, third and fourth are copies of deeds by which the plaintiff acquired title to the entire tract of land owned by it; the fifth is a copy of a deed from the plaintiff to McFarland conveying unto him that portion of the entire tract which is now owned by the defendants; the sixth is a copy of deed from McFarland to the defendants, conveying said land unto them; the seventh is a plat showing the location of the lands, both of the plaintiff and defendants, mentioned in these proceedings. The land owned by the plaintiff, both

before and since the acquisition by the defendants of the lot upon which the roundhouse is located, was, and is, very nearly surrounded by the lands owned by several different railroad companies operating their roads in that vicinity. The eighth exhibit is a report to the plaintiff by Penniman & Browne, chemists, of examination or tests made by them of the atmosphere, the first in their laboratory, 215 E. Fayette street, Baltimore City, and the others, six in all, made at different times and places upon said lands of the plaintiff and the nearby lands of others.

It was shown by the analysis so made by said chemists upon the property of the plaintiff and others near or adjacent to the roundhouse, that the atmosphere at such times and places was largely impregnated with sulphuric acid, varying in amount at different times and places as a result of the varying conditions of the wind and weather, and it was found by said tests that the quantity of sulphuric acid in the atmosphere at or near the roundhouse was much greater than in the atmosphere of the laboratory, and this difference of quantity is ascribed by the chemists as due to the conditions produced by the fumes and smoke, etc., from the round house. As the chemists state in their report, in order to make the results of their tests or examinations "readily comparable" they adopted as the unit of measurement the amount of sulphur dioxide present in three hundred and seventy-four cubic feet, the amount of air used or consumed by one person for respiration in twenty-four hours. Their first experiment, made in their laboratory on October 22nd, 1913, showed the presence of .024 grain of sulphur dioxide per 374 cubic feet. The second experiment, made on the 28th and 29th of the same month, at a house of the plaintiff's situated to the southwest of and approximately two hundred yards from the roundhouse, with the wind blowing from the roundhouse towards the apparatus for one hour and a quarter, showed the amount of sulphur dioxide present in the atmosphere at such point, for such time, to be seventy-five times the usual amount, and for the whole twenty-four hours, including the

hour and a quarter we have mentioned, the result showed a presence of .117 grain of sulphur dioxide per 374 cubic feet. The third experiment was made at Mr. Funk's house at the corner of Philadelphia road and Eleventh street, directly north of the power house of the Pennsylvania Railroad Company; the wind was blowing from the northeast and later blew from the east. The result showed .049 grain of sulphur dioxide per 374 cubic feet, twice the usual amount. Experiment four was made at No. 138 Tenth street. The wind was blowing from the northeast but soon changed to the southeast. The result showed the presence of .043 grain of sulphur dioxide per 374 cubic feet, nearly twice the usual amount. Experiment five was made from a movable shed erected of shutters, placed on the property of the plaintiff, southeast of and one hundred and twenty-five yards from the roundhouse. The wind was variable, but was not generally blowing from the roundhouse towards the shed. The result showed the presence of 1.882 grains of sulphur dioxide, an increase of seventy-five times over the usual conditions. The sixth experiment was lost on account of high winds overturning the apparatus. The seventh experiment was made from a shed erected one hundred yards east of the roundhouse, the wind blowing from the roundhouse over the shed for the greater length of time, but not invariably so. The test started at six P. M. and finished about four fifteen P. M. the next day. The amount of sulphur dioxide was 21.098 grains per 374 cubic feet, showing an increase of 878 times over the usual conditions. Sulphur dioxide acted on by the oxygen in the air forms sulphuric acid.

The report of the chemists states that the effects of diluted sulphuric acid upon iron, tin, copper and zinc is to corrode them, and that it weakens and finally destroys paint films, and that its action is particularly marked upon cotton and linen fabrics and not so marked upon wool. It also states that its effect upon persons inhaling air containing considerable quantities of it is irritating and that such irritating

effect must undoubtedly in some cases result not only in serious inconvenience, but positive danger to health.

The report further adds that in the condition of affairs prevailing (in this case), where the sulphur dioxide is accompanied by a large number of fumes and gases, the effect of sulphur dioxide is multiplied many fold. "This includes, it must be remembered, dust, soot, carbon dioxide, carbon monoxide, and coal gas." The report then states that "it is a matter of common knowledge that the air of cities must be and is contaminated to a greater or less extent, and that such contamination is of the same general kind as proceeds from the roundhouse of the Pennsylvania Railroad Company, must also be recognized. That other contaminations, some of which may be of a more serious nature, sometimes occur, is also true."

The bill then prays, first, that a mandatory injunction be issued "requiring the defendants to abate the nuisance of said roundhouse and its running of said water over the lands of the plaintiff"; second, that a mandatory decree be passed "requiring the defendants to pay the plaintiff, in money, whatever this Court may find it has already suffered by the smoke and noxious fumes arising from said roundhouse and the damage from the water running over said lands of the plaintiff," etc.; third, and for general relief.

The defendants demurred to the bill upon the grounds, (1st), it does not state such a case as entitles the plaintiff to an injunction as prayed; and (2nd), that it does not state such a case as entitles the plaintiff to any relief against the defendants.

The Court overruled the demurrer, and it is from its order overruling the demurrer that this appeal is taken.

It is urged against the bill, to use the language of the defendants, found in the brief, that "the plaintiff has not shown by its bill that it has suffered or sustained any real injury or such as would entitle it in a Court of law to substantial damages, with respect to the smoke and its constituents, complained of. and no irreparable damage with respect

to the alleged damage done by the stream of water flowing through the ditch on its land; and therefore, in neither case has the plaintiff shown itself entitled to an injunction from a Court of Equity."

We will first consider this objection in relation to the alleged injuries suffered by the plaintiff by reason of the water flowing upon and through its land, as alleged in the bill.

It is clear to us that the plaintiff is not only entitled to recover for the damages sustained by it as a result of this wrong complained of, but that it is likewise entitled to an injunction restraining the defendants from further like injuries. The injury here complained of is such a taking of the land of the plaintiff for public use as demands compensation under the constitutional provision that private property shall not be taken for public use without just compensation.

This Court in the case of *Guest* v. *Church Hill,* 90 Md. 689, in support of its views expressed by JUDGE SCHMUCKER in that case, approvingly cited *Pumpelly* v. *Green Bay Canal Company,* 13 Wall. 166, in which it was held that the overflowing of the lands of an individual with water by the public authorities for public benefit, under statutes authorizing it to be done, is such a taking of the land for public use as demands compensation under the constitutional provision, that private property shall not be taken for public use without just compensation. And JUDGE COOLEY, in *Ashley* v. *Port Huron,* 35 Mich. 296, says, that "the property right of a private individual in his land, is as much appropriated by pouring upon it a flood of water as by an actual taking of it for streets or buildings." *Hitchens* v. *Mayor and Councilmen of Frostburg,* 99 Md. 617; *Noonan* v. *City of Albany,* 79 N. Y. 470; *Mayor, etc., of Baltimore* v. *Merryman,* 86 Md. 592.

It is true, the above are cases where the wrongs complained of were committed by municipal corporations, but certainly individuals or private corporations can have no greater right, and will not be permitted to commit such wrongs and escape liability in so doing. The injury complained of is alleged to

be a continuing one, in the commission of which the defendants may be restrained by a Court of Equity.

The right to recover damages for injuries resulting from smoke and noxious fumes, caused by the defendants, flowing over the lands of the plaintiff, similar to those alleged to have been suffered by the plaintiff in this case, has been passed upon by this Court in a number of cases.

In the case of *Susquehanna Fertilizer Co.* v. *Malone,* 73 Md. 275, where the evidence disclosed that noxious gases escaped from the factory used by the defendant for the manufacture of sulphuric acid and commercial fertilizers, and which gases, when driven by the winds on the premises of the plaintiff and his tenants, were so offensive and noxious as to affect the health of plaintiff's family, and at times to oblige them to leave the table and to abandon the house, and that such gases also injured materially his property, discolored and injured clothing hung out to dry, stained the glass in the windows, and even corroded the tin spouting on the houses, the Court held that the plaintiff was entitled to recover for the damages resulting from such injuries, and in discussing the case the Court said: "We fully agree that, in actions of this kind, the law does not regard trifling inconveniences; that everything must be looked at from a reasonable point of view; that in determining the question of nuisance in such case, the locality and all the surrounding circumstances should be taken into consideration; and that where expensive works have been erected and carried on, which are useful and needful to the public, persons must not stand on extreme rights, and bring actions in respect of every trifling annoyance, otherwise, business could not be carried on in such places. But still, if the result of the trade or business thus carried on is such as to interfere with the physical comfort, by another, of his property, or such as to occasion substantial injury to the property itself, there is wrong to the neighboring owner for which an action will lie, *St. Helen's Smelting Co.* v. *Tipping,* 11 H. L. Cas. 642."

And in the case of *Euler* v. *Sullivan,* 75 Md. 618, where the Court held the prayer upon this question was too general and misleading, it, nevertheless, approvingly quoted, as we have done, from the case just referred to, and stated that the principle there laid down was the established law of the State. It also quoted, with approval, from the opinion of the Court in *Dittman & Berger* v. *Repp,* 50 Md. 522, where it was said: "The question is whether the nuisance complained of will or does produce the condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the plaintiff." *Fertilizer Co.* v. *Spangler,* 86 Md. 562; *Chappell* v. *Funk,* 57 Md. 465; *Adams* v. *Michael,* 38 Md. 123; *Crump* v. *Lambert,* L. R. 3 Eq. Cases, 409. In the last case, which is approvingly quoted in *Adams* v. *Michael, supra,* and again in *Fertilizer Co.* v. *Spangler, supra,* his LORDSHIP said: "There is, I apprehend, no distinction between any of the cases, whether it be smoke, smell, noise, vapor or water, or any gas or fluid. The owner of one tenement cannot cause or permit to pass over, or flow into his neighbor's tenement, any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighboring tenement, or so as to injure his property." He also said: "The real question in all of the cases is the question of fact, viz: whether the annoyance is such as materially to interfere with the ordinary comfort of human existence."

There are many other cases to which we might refer in support of this principle, but we will content ourselves by referring only to one other case, the recent case of the *Belt R. R. Co.* v. *Sattler,* 100 Md. 306. The evidence in that case disclosed that the plaintiff for many years lived at No. 2619 N. Charles St., Baltimore, and that he was the owner, at the time of the institution of the suit, of the two lots of land the damage to which was the basis of the suit; one of

these fronted one hundred feet on Charles street, immediately south of the open cut of the defendant's railroad, and ran back a distance of one hundred and eighty-four feet; the other fronted fifty feet on Charles street, with the same depth as the first.   That between these two lots was a lot of fifty feet, fronting on Charles street, with the same depth as the other lots, and upon which was situated the house in which the plaintiff resided but did not own.   The two lots owned by the plaintiff were used as a garden and contained fruit trees, shade trees, walks, etc.   That in the open cut of the defendant's road adjacent to the first lot named, were two tracks, over which a great number of trains passed during the day and night; that as soon as the trains came out of the tunnel into the open cut in front of his lands, they drew the smoke out of the tunnel and it was cast upon his property; and vibrations were caused by the trains.   The *narr.* alleged, "That by reason of said discharge of smoke and offensive and unwholesome vapors upon the plaintiff's land, and by reason of the said noise and vibration as aforesaid, upon plaintiff's said land, it is rendered far less desirable for dwelling or building purposes than it otherwise would be, and the plaintiff is deprived of the profits and advantages that would reasonably enure to him from the development and improvement of his said property, and the value thereof is seriously impaired," etc.

One of the pleas filed to this declaration was demurred to, which demurrer was sustained, the result of which was to hold that the declaration was sufficient.   In that case the *narr.* alleged and the plea admitted that the plaintiff's property was damaged in the manner complained of.   So in this case the demurrer to the bill admits that the plaintiff sustained the damages resulting from the alleged injuries mentioned in the bill, but by the demurrer the defendants contend that such injuries as alleged therein are not sufficient to entitle the plaintiff to recover.   The Court in that case held the *narr.* to be sufficient and reiterated the principle laid down in the case from which we have quoted, that "where a

trade or business is carried on in such a manner as to inter-
fere with the reasonable and comfortable enjoyment by an-
other of his property, or which occasions material, injury to
the property itself, a wrong is done to a neighboring owner
for which an action will lie."

We have no difficulty in reaching the conclusion that an
action at law will lie in this case to recover damages resulting
from the injuries suffered by the plaintiff from the smoke
and noxious fumes flowing over its lands, discharged from
the roundhouse of the defendants, as alleged in its bill, if
found to exist, as alleged therein. *Belt R. R. Co.* v. *Sattler,
supra; Garrett* v. *Lake Roland Elevated Ry. Co.,* 79 Md.
277; *O'Brien* v. *Balto. Belt R. R. Co.,* 74 Md. 363. But we
have some difficulty in determining the question whether or
not the injuries complained of amount to a taking of the
property under the constitutional provision hereinbefore men-
tioned. If there is such a taking, there can be no doubt as to
the plaintiff's right to relief by injunction, as prayed in the
bill. There is much conflict of opinion expressed by the dif-
ferent Courts of this country and text writers as to what
amounts to a taking of property under the provisions of the
various Constitutions, the language of which is the same as
or similar to the language used in the Constitution of Mary-
land.

In *Garrett* v. *Lake Roland Elevated Railway Co., supra,*
the appeal was from a decree dismissing the appellant's bill
of complaint, in which he charged that the construction of
the abutment of solid masonry in the bed of North street and
the elevated structure would, by reducing the width of the
street in front of the appellant's lots, deprive his premises
of light and air and would destroy the access to his property
from said street and prevent him from reaching the same
with vehicles ordinarily used in Baltimore, and that such de-
struction of his right of access in the manner stated and the
deprivation of light and air, as aforesaid, rendered the prop-
erty unsalable and deprived him of its market value, and
constituted, in fact and in law, a taking of his property with-

out compensation therefor, as required by the Constitution of the State of Maryland. In the opinion delivered by JUDGE McSHERRY in that case he said: "The consequential damages resulting from the act complained of—the incidental injuries to the owner—are thus charged to be a taking of private property for a public use, though the property itself remains unappropriated and unapplied to that use in any way whatever.

"Whilst the Constitution of the State has prohibited the taking of private property for a public use without compensation being first paid or tendered, it has not undertaken to define or declare what shall be a taking within its terms. True, there is some conflict among adjudged cases, as to what amounts to such a taking, but the overwhelming weight of authority accords with the conclusions which this Court announced in the two cases of *Mayor & C. C. of Cumberland* v. *Willison,* 50 Md. 148, and *O'Brien* v. *The Balto. Belt. R. R. Co.,* 74 Md. 363. * * * There is practically an unbroken current of adjudged cases broadly and clearly marking and defining the difference between an incidental injury to, and an actual taking of, private property. An injury to, and a taking of, such property are distinct things. Every taking involves an injury of some kind, though every injury does not include a taking. 'Property is taken by an entry upon and appropriation of it, as in the ordinary case of location. It is injured by obstructing access, as in *Duncan's case* (111 Penn. St. 352), or drainage, as in *Ziemer's case* (124 Penn. St. 560).' *Jones* v. *Erie & W. V. R. Co.* (Pa.), 25 Atl. Rep. 137. * * * The constitutional right to compensation for private property taken for public use does not extend to instances where the land is not actually taken, but only indirectly or consequentially injured. *Ottawa O. C. & C. G. R. R. Co.* v. *Larsen,* 2 L. R. A. 59; *Omaha Horse Ry. Co.* v. *Cable Tram-way Co.,* 32 Fed. Rep. 727; *Heiss* v. *Milwaukee & L. W. R. Co.,* 69 Wis. 555; *Grand Rapids & I. R. R. Co.* v. *Heisel,* 38 Mich. 62; *Crosby* v. *Ownesboro & Russelville R. R. Co.,* 10 Bush. 289; *Dorman* v. *City of Jacksonville,* 13

Fla. 545; *Bradley* v. *N. Y. & N. H. R. R. Co.,* 21 Conn. 308; *Spencer* v. *P. P. & O. R. R. Co.,* 23 W. Va. 407; *Richardson* v. *Vermont Central R. R. Co.,* 25 Vt. 465; *Balto. & Potomac R. R. Co.* v. *Fifth Bap. Ch.,* 108 U. S. 317."

In the case of *O'Brien* v. *The Balto. Belt R. R. Co., supra,* referred to in JUDGE MCSHERRY's opinion, JUDGE ALVEY, speaking for the Court, said: "It is not charged that there will be any invasion of, or physical interference with, any part of the plaintiff's lot, in the construction of the road. The most that he claims for is that he will be deprived of the full use of the street, as it now exists, and that his property will be depreciated in value by the construction of the road. This, however, is but an injury, to whatever extent it may be suffered, *of an incidental or consequential nature.* * * * There is no such taking of private property for public use as is contemplated by the Constitution of the State."

And JUDGE MCSHERRY, in his opinion in the *Garrett case,* after quoting from the *O'Brien case* the language we have stated, said: "We must either adhere to these two decisions in 50 and 74 Md., strictly in accord, as we have shown them to be, with the decided weight of judicial opinion on this subject, or else, receding from them, adopt the Ohio or the New York doctrine. We see no reason for departing from or for modifying our former deliberate judgments." And so the Court there held that the injuries complained of by the plaintiff in his bill were not such as amounted to a taking under the said Constitution provision, but decided that for such injuries as were there complained of, though they did not amount to a taking of property, if there were found to exist, there was a remedy in a Court of law. *Balto. & Potomac R. R. Co.* v. *Reaney,* 42 Md. 117; *O'Brien* v. *The Balto. Belt R. R. Co., supra.*

In the case of *Belt R. R. Co.* v. *Sattler, supra,* an action at law and not a proceeding in equity, the facts of which case we have already fully stated, the Court said: "If in view of our decisions it could be said that the injuries to the plaintiff's property do not amount to an actual in-

vasion, does that fact exculpate the defendants? It is argued that the lawful act done in the *Reaney case* for which there was a recovery resulted in an actual invasion, and that hence that case has no application here. But there are a number of other cases in which it has been held that a recovery may be had for consequential injuries caused by a lawful act even when there is 'no taking.' So that an action lies in both cases; *Garrett's case,* 79 Md. 277; *Reaney's case,* 42 Md. 117; *Lake Roland R. Co.* v. *Webster,* 81 Md. 529, and other cases not necessary to cite. Why there should be any difference made in the right to recover if there is an actual invasion, and when the damage is only consequential, it is difficult to understand, for the damage, loss, inconvenience and discomfort to the owner may be as great in one case as in the other. In *Guest* v. *Church Hill,* 90 Md. 689, we held that the overflowing of the land of an individual with water is an invasion thereof; and the fact that smoke, noise and vapor caused the injury here can make no difference, certainly none in the right to recover."

Applying the principle enunciated in the case of *Mayor & C. C. of Cumberland* v. *Willison, O'Brien* v. *Balto. Belt R. Co.,* and *Garrett* v. *Lake Roland Elevated R. Co.,* to the facts of this case, we are of the opinion that the injuries complained of do not amount to a taking under the constitutional provision above referred to, and we do not understand the case of *Belt R. R. Co.* v. *Sattler* as going so far as to hold that in that case there was a taking or invasion of the plaintiff's land. There the Court was called upon to determine whether or not an action at law would lie to recover damages for the injuries there complained of. It was not necessary in that case for the Court to determine whether there was a taking, the question there was his right to recover in an action for damages. And the Court there held, as we hold in this case, if the facts alleged be shown to exist, that his right to recover in such action existed even though there was no invasion or actual taking of the land; and his right to recover was not dependent upon an actual invasion, but that he was

entitled to recover for the incidental injuries there alleged, if shown to exist.

The roundhouse of the defendants, it would seem, was necessary to the efficient operation of their roads, which were constructed under their charter powers granted to them by the State, and it is not alleged in the bill or its exhibits that it was located in such a place or constructed in such a manner as to amount to negligence on the part of the defendants, or that it is now or has ever been improperly or negligently operated, in consequence of which the injuries complained of were produced, of that by a proper management and operation of the roundhouse, the smoke and noxious fumes complained of could, by proper care and diligence exercised on the part of the defendants, be eliminated. Therefore, under the decisions of this Court, the maintenance of the roundhouse as complained of, cannot be held to be a public nuisance (*Poole* v. *Falls Road Ry. Co.,* 88 Md. 541), entitling the plaintiff to the relief sought by way of injunction.

We have examined all the authorities to which we have been referred and many others in addition thereto, and we have found much conflict in the decisions of the Courts of this country upon a number of the questions here involved, but we think the views we have here expressed are consonant with the decisions of this Court establishing the law of this State in respect to such questions.

But as we hold that the plaintiff is entitled to the relief prayed in respect to the injuries complained of by reason of the flowing of the water over its lands, we must sustain the ruling of the Court upon the demurrer, in as much as such demurrer is to the whole bill and not to a part of it. The order of the Court will therefore be affirmed.

*Order affirmed, with costs to the appellee.*