NETTIE TAYLOR

*vs.*

MAYOR AND CITY COUNCIL OF BALTIMORE.

*Constitutional law*: section 40 of Article 3; *"taking of property"; inhibition not confined to actual physical taking.*
*Nuisances*: *municipal corporations; Baltimore City;*
*sewerage disposal plant.*

Chapter 349 of the Acts of 1904, authorizing the City of Baltimore to erect, operate and maintain a sewerage disposal and filtration plant extending out into the counties, does not authorize the city authorities to create a nuisance; and if, in the operation of such plant, a nuisance is created, the city is responsible to those whose property is injured. pp. 148-150

*Decided January 11th, 1917.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE, J.), to which Court the case had been removed from the Circuit Court for Baltimore County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Osborne I. Yellott* and *J. LeRoy Hopkins* (with whom was *Joseph L. Donovan* on the brief), for the appellant.

*Edward J. Colgan, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued the appellee for damages alleged to have been sustained by her for injuries to her property situated in Baltimore County, caused by a sewage disposal plant, constructed by the defendant. It is alleged in the first count of the *narr.* that into said plant the defendant discharges "all the accumulations from the kitchens, bathrooms, water-closets, mercantile establishments, stables, streets and other places in Baltimore City, which said matter is spread out in a diluted condition through the system of drains, pipes, etc., at said sewage disposal plant over a large area of low land near to the plaintiff's said property, and from which there arises a horrible, sickening and disease-breeding stench, which at all hours of the day and night permeates the atmosphere around the plaintiff's said property, and is carried into and through the dwellings and other buildings thereon, rendering the same unfit for occupancy, and in consequence of which wrongful act of the defendant the property of the plaintiff has been greatly depreciated in value and practically destroyed for all useful purposes." The second count alleges negligence in the construction and maintenance of the plant.

The suit was instituted in Baltimore County but the record was removed to Howard County where the case was tried. At the conclusion of the plaintiff's testimony a prayer was granted by the lower Court, that the plaintiff had offered no evidence legally sufficient, under the pleadings, to entitle the plaintiff to recover, and the jury was instructed to render a verdict for the defendant, which was accordingly done, and

from a judgment entered thereon, this appeal was taken. The only exception presented by the record is the one to the granting of that prayer.

It is conceded that the power and authority to construct and maintain the plant was granted by the Legislature—being Chapter 349 of the Acts of 1904—and that no evidence was offered to prove negligence on the part of the defendant as alleged in the second count, the plaintiff standing on the first count only. The position taken by the appellee is thus stated in its brief: "That an individual or a private corporation is answerable in damages, as for a nuisance, in cases like this where special damages are shown, is, of course, a proposition so well established as to be beyond question. In regard to municipal corporations, however, which act under legislative authority in the prosecution of works designed for the public good, the doctrine is otherwise, and there can be no recovery for consequential injuries except in those cases where the power is exceeded, or the work is negligently performed."

The plaintiff's property consists of three contiguous parcels of ground which are improved, and in its entirety was described by her in her testimony as "bounded on the east by Back River, which at this point is about a quarter of a mile wide, on the north by Eastern avenue, upon which it fronts, and on the west and south by the old Willis Farm, which was purchased by the Mayor and City Council of Baltimore, it being a 450 acre tract of land, and upon which the defendant has erected a Sewerage Disposal Plant about 1500 feet distant from and to the south and southwest of plaintiff's property." The witnesses vary as to the distance —one saying the plant is about 1000 feet, another about a quarter of a mile from plaintiff's property, etc. The plaintiff had occupied the property since 1908, but in 1911 she purchased the leasehold interests in the three parcels, they being subject to irredeemable ground-rents amounting in all to $650.00 per annum. The one next to the river is a hotel

property known as "Mitchell's Back River Park," the improvements consisting of a hotel, a dancing pavillion and a dining pavillion; adjoining that on the west is a dwelling house, and next to that is a building used for a store and dwelling. The plant is about five miles from the city limits.

It was completed in 1913, and, according to the evidence, the conditions at plaintiff's property have undoubtedly been wholly different from what they were before the plant was operated. Since then the conditions are described as "something terrible at times," "nauseating," "simply unbearable," "smells like everything nasty," "pungent, strong and nauseating odors," etc. They are not bad all of the time, but when there is a southwest wind or the atmosphere is heavy they are particularly so. Patrons of the place became nauseated, would have to leave the table, and the plaintiff testified that "Not more than one-quarter of the people come down there now." Gnats come to her property from the plant in such swarms that they can not be kept out of the house—get in the food and are simply intolerable, according to the witnesses. The appellee contends that there could be no recovery on account of the gnats, as damages are not claimed for them in the *narr.*, but without discussing that, it would have been easy to amend the declaration if that point had been raised, and the case had not been taken from the jury. It must be conceded that there was evidence tending to show conditions which were almost unbearable at times, requiring the windows to be closed, and even then the odors were such as to interfere with the sleep of some of the witnesses. The worst conditions are in the summer, when the prevailing winds are from the southwest, and that is the season of the year when the plaintiff had most patronage. The only expert called, Mr. Hurst, testified to values before and after the plant went into operation, and his testimony tended to show a depreciation of the property amounting to $10,000.00.

Having stated the facts thus fully, the important question still is, whether the appellee is liable to respond in damages for the loss the appellant has sustained by reason of the operation of this plant by it. There was no sewerage system in Baltimore until a plan was adopted a few years ago, which has involved an expenditure of $23,000,000. There can be no doubt that the municipality had ample power and authority to construct such a system. What amounts to a "taking," within the meaning of Section 40 of Article 3 of our Constitution, which prohibits the General Assembly from enacting a law "authorizing private property to be *taken* for public use, without just compensation," has often been before us and our predecessors. As one contention of the appellant is that her property has in effect been so *taken,* a reference to some of those decisions, as well as to some in which there was no *actual taking,* but damages for injuries sustained were involved, may be helpful. In *B. & P. R. R. Co.* v. *Reaney,* 42 Md. 117, the suit was against the railroad company and not against the city. The Court said that: "As against the municipal government, in the careful exercise of its right and power to grade, change and improve the street, there could be no cause of action for any unavoidable injury done, but as against the appellant, a private corporation in no wise connected with the municipal government, obtaining authority to use the streets in an extraordinary manner, for its own private purposes and profit, the case is quite different." In *O'Brien* v. *Baltimore Belt. R. R. Co.,* 74 Md. 363, an injunction was applied for against the railroad company which, under authority from the Legislature and the city, made an open cut on the west half of Howard street to a depth of from ten to twenty feet. After the cut was made there was still about one-half of the street undisturbed in front of the plaintiff's property, which was on the east side of the street, and the plaintiff was only an abutting owner, having no free-hold or lease-hold estate in the bed of the street. The right and power of the Legislature, through the

agency of the municipal government, to change and alter the grade of existing streets from time to time, and as often as deemed proper, without incurring liability by the municipality to the abutting owner of property for the *mere consequential* damages that may be suffered by reason of the changed conditions, was clearly announced. The opinion pointed out the distinction between such a case and one where a steam railroad company, having no connection with the municipal government, changed the grade and occupied the street, but the Court held that, as there was no *taking* of private property, and it was not charged that there will be "any invasion of or physical interference with any part of the plaintiff's lot, in the construction of the road," there was no ground for an injunction. The Court said, however, that the plaintiff had a remedy at law, as the ordinance passed in pursuance of the statute expressly provided that the company should pay and be liable for the *actual* damages sustained by abutting properties, "even if he were without remedy by the common law."

*Cumberland* v. *Willison,* 50 Md. 138, was an action at law. It was shown that by reason of the paving, grading, repairing, draining, sewering and extending of streets, in the execution of powers conferred on the city by the Legislature, the authorities of Cumberland changed, or so directed the natural flow of surface water, which usually found its way into a natural water course, used by the plaintiff as part of his mill race, that a larger flow of such water than formerly was emptied into the race, and in times of heavy rains a larger quantity of mud, soil and debris was carried into the race near the mill of plaintiff than before the improvements were made. It was held, quoting for convenience from the syllabus, that, "as the defendant acted within the scope of the authority conferred on it by the laws of the State, and with no want of reasonable care and skill in the execution of the power, the action could not be maintained."

In *Garrett* v. *Lake Roland El. Ry. Co.*, 79 Md. 277, a stone abutment and an elevated structure were erected in front of lots owned by the appellant which reduced the width of the street at that point to less than ten feet, beyond the structure. An injunction was applied for on the theory that it was a "taking" of the plaintiff's land, but it was refused and an appeal taken to this Court where the decree was affirmed. JUDGE MCSHERRY, after stating the contention of the appellant, said: "Though there has been no physical invasion of the appellant's property, still if the act complained of constitutes, *by reason of its consequences,* a taking of the appellant's property for a public use, within the meaning of Section 40 of Article 3 of the Constitution * * * then the injunction should have been granted. But if, on the contrary. this was not such a taking as the Constitution has reference to, and injury has been done the appellant, then his remedy is in another and different forum," and he then referred to a section of the ordinance involved in the case, which made provision for the prompt and effective enforcement of such judgment as a Court of law might pronounce. He said that while there is some conflict in the adjudged cases as to what amounts to a *taking,* the overwhelming weight of authority accords with the conclusions reached in *Willison's case,* and *O'Brien's case, supra,* and held there was no "taking" in that case.

In *Hitchins* v. *Frostburg,* 68 Md. 100, it was held that where a municipal corporation had changed the natural flow of surface water by the elevation of the grade of a street, and the water was then concentrated in a gutter and made to flow to the mouth of a sewer, it was the duty of the corporation to provide adequate means for carrying off the water so as to avoid damages to the adjoining property, and if the surface water be allowed to accumulate in large quantities at the mouth of the sewer, and thus flow back upon private property, that constitutes a nuisance, which it is the duty

of the corporation to remove, and for the neglect of that duty, it is liable to the private owner.

In *Baltimore* v. *Merryman,* 86 Md. 584, the city had built a dam across a stream which ran through the plaintiff's farm,—raising the water a foot or more higher than it was before the dam was erected and obstructing the flow of water along her farm, forcing it back upon it and thereby causing large deposits of sand, mud, dirt and debris to collect and gather in the bed of the stream. We said: "It is true that the defendant was acting under powers granted by the Legislature when the dam and lake were made, but if in building them it caused the water to flow back and remain on the plaintiff's property or any part thereof, we can understand no reason why it could not be made to respond in damages for the injuries sustained thereby." We held that the occupation of a foot of the bank along plaintiff's property by the water was a "taking." Then after referring to the allegation that the defendant caused the water to be backed up and overflow her farm we said: "Is it to be said that a municipal corporation can thus interfere with the rights of others and injure their property without being liable in damages, merely because it, in constructing its work, is acting under legislative authority? The Legislature has no power to grant such rights to any corporation, public or private."

In *Guest* v. *Church Hill,* 90 Md. 689, after again saying that a municipal corporation, acting under legislative authority, could change the grades of streets without being liable for incidental or consequential injuries to abutting land owners, if the work be done so as to avoid unnecessary injury to adjacent property, *and there be no invasion of such property,* we held that if it by a change in the grade of streets and the construction of drains divert the surface water from its natural flow, concentrate it in volume and throw it upon the land of an abutting owner, such action was an invasion of the adjoining property and the municipality was liable for the injury caused. JUDGE SCHMUCKER, who deliv-

ered the opinion, quoted at some length from the *Hitchins'
case, supra,* where it was there said that collecting the water
in front of the plaintiff's property "constituted a nuisance,
and, as such, it was certainly the duty of the defendant to
remove it." In *Cahill* v. *Baltimore,* 93 Md. 233, we held
that when a municipality changed the surface drain adjacent
to the plaintiff's land and caused it to empty into a stream
along side of plaintiff's marine railway, depositing there mud
and refuse matter, etc., the city was liable, although there
was no negligence in the construction or location of the drain.

In *De Lauder* v. *Baltimore County,* 94 Md. 1, the County
Commissioners constructed a culvert across a public road,
and in doing so filled in the road to make the grade of the
approaches thereto easy. The embankment thus raised was
from three or four feet above the adjoining ground over
which Mrs. De Lauder had a right of way. Along the em-
bankment, but within the limits of the public road, the coun-
ty authorities erected guard-rails and one of them covered
the entire entrance to the right of way which could not be
used even if graded up to the line of the culvert, without re-
moving the guard-rail. It made it impossible for her to get
in or out of the right of way with a team. It was held to
be a "taking" of property within the constitutional inhibi-
tion. JUDGE PEARCE said: "The injury inflicted upon Mrs.
De Lauder is not rendering of the use of her right of way
inconvenient or expensive, but it is the destruction of its
use, and its destruction is a *taking* in as just a sense as the
appropriation of the gravel bank for the repair of a public
road would be a taking."

In the recent case of *Walters* v. *B. & O. R. R. Co.,* and
*The Mayor, etc., of Baltimore,* in 120 Md. 644, the railroad
company and the city entered into an agreement, which re-
ceived the sanction of the Legislature, by which the railroad
company was authorized to build certain bridges over its
tracks. One of them was at Hamburg street and the plain-
tiffs owned a lot on that street. In constructing the approach

to the bridge, a bow window which projected slightly beyond the building line of the street was removed, thus leaving a large opening in the front wall, twelve inches from the front door of the house there was erected a large concrete pillar, one of the supports for the footway and roadway, and the footway passed the front door and first floor windows with an intervening space of only three inches, for four or five feet above the level of the first floor. JUDGE STOCKBRIDGE, in delivering the opinion of the Court, said: "The effect of this structure was to effectually bar all ingress to and egress from the premises, unless by means of a ladder from the second floor window to the newly constructed footway. The light and air were shut off from the first floor of the premises, thereby rendering that portion of the dwelling damp and uninhabitable * * *. Both of the defendants admit the damage, but each insists that the other is liable." Again, he said: "In view of the authorities to which reference has been made in part, and the injury to the property of the plaintiffs being such as already indicated, it follows that the construction of the abutment or approach complained of in this case amounted to a taking of the property of the plaintiffs, which neither the Mayor and City Council could do or authorize to be done without making just compensation therefor to the owner," and held that the two defendants were joint tort feasors, and therefore both were liable to the plaintiffs. See also *B. & O. R. R. Co. and Mayor, etc., of Baltimore* v. *Kane,* 124 Md. 231; *Same* v. *Kahl, Ibid,* 299, and *Same* v. *Bregenzer,* 125 Md. 78, where the distinction between the liability of a municipality and that of a railroad company is pointed out by JUDGE BURKE who delivered the opinions in the three cases. The city was held not to be liable in either of those cases, while the railroad was held to be liable in actions at law.

The aforegoing cases establish beyond controversy that what was done by the city was not a "taking," within the meaning of Section 40 of Article 3 of the Constitution; that

there must be a substantial destruction of the rights of ingress to and egress from the property of the party complaining, or a deprivation and not merely a diminution of light and air to constitute such a *taking* by a municipality, acting under legislative authority and not exceeding its powers and not being guilty of negligence in grading, paving, etc., its streets, unless there is an encroachment upon or physical invasion of the property, that the municipality can not, however, in making sewers and drains concentrate the water and empty it upon the property of another, and *a fortiori* can not thus discharge mud, debris, sewage or other matter upon such property; and that if a private corporation had injuriously affected the plaintiff's property to the extent and in the manner her testimony tends to show, it would be liable to respond in damages for committing a nuisance on account of which the plaintiff suffered special injury.

The question therefore yet to be determined is whether the appellee, a municipal corporation, is liable under the facts and circumstances above set out, which would amount to a nuisance if done by a private corporation, or individuals— even if done by legislative authority. In *Belt R. R. Co.* v. *Sattler,* 100 Md. 306, a railroad company was held liable for injury to property adjacent to the mouth of a tunnel caused by the smoke, cinders and gases resulting from the operation of the road, although the company was authorized by statute to construct and operate its line through an open cut between tunnels in the City of Baltimore, and although there was no taking of the plaintiff's land and no proof of negligence in the mode of operation. In *N. C. Ry. Co.* v. *Oldenburg and Kelley, Inc.,* 122 Md. 236, it was held, JUDGE PATTISON speaking for the Court, that a railroad company allowing steam and hot water from its round-house to so flow over the land of an adjoining owner as to make a ditch or ravine on it, and undermine the soil, thereby washing away a bridge, was a *taking* of the property, and plaintiff was entitled to an injunction, and also to sue for damages, but it was further

held that although discharging smoke and noxious fumes, which were destructive, of plaintiff's grass, vegetable matter, trees, etc., affecting the health of the tenants of the plaintiff and thereby destroying the value of its houses as dwellings, and making them uninhabitable, was not a taking, yet the plaintiff was entitled to sue for damages.

In *Baltimore v. Fairfield,* 87 Md. 352, JUDGE McSHERRY reviewed many cases involving the right to enjoin a municipality for a nuisance. The city was about to place a woman afflicted with leprosy on a tract of land owned by it, adjoining property of the appellee, which was divided into building lots and some of which had been built upon. The city had some years before abandoned the property on which the woman was to be kept, as a place for the isolation of contagious diseases, and the hospital buildings and pest houses had been burned by the city health officers. After that abandonment the appellee developed its property. JUDGE McSHERRY *said* that "the statute law of the State confers upon the Mayor and City Council plenary power to establish, both within and beyond the city limits, hospitals and pest houses for the isolation and treatment of contagious and infectious diseases. Sections 378, 409 Article 4, Code Public Local Laws (1888). The preservation of the public health renders such litigation highly essential, and the authority of the General Assembly to enact it, in the exercise of the police power of the State, is beyond question or controversy. * * * If it be conceded that the State may, in exercising a public power, create a private nuisance with immunity, the immunity grows out of the public necessity and rests upon the State's sovereignty; but it cannot—or at all events, will not, in the absence of an explicit legislative declaration—be assumed that the State would, if directly exercising the same power, so exercise it as to produce or cause an injury to the rights of property of an individual, unless, perhaps, the very doing of the act directed to be done will necessarily and unavoidably, under any condition, result in the creation of

what would be, but for the authorization, a private nuisance. The delegation of a power to do an act, whilst conferring full authority to perform the act itself, does not, therefore, without more, essentially and without exception, carry the right to so do it as to inflict loss or injury upon an innocent individual. As thus understood the power of the municipality, to erect and maintain hospitals and pest houses may be exerted and applied precisely as the same power if not delegated could have been availed of by the State." After speaking of what were sometimes called "legalized nuisances," the opinion proceeds: "But however free from interference by the public, acts of *this character* may be when authorized to be done by a municipality under competent and sufficient legislative grant, *the right of an individual to complain of the special injury sustained by him as a consequence of their being done is, ordinarily, in no way impaired or affected.* (Italics ours). The mere naked grant of power to a municipality to do acts, which if done without the sanction of that power would be nuisances, does not in all instances carry with it a guaranty of immunity from claims for private injuries that result directly from the exercise of the power. And this is necessarily so in the absence of an explicit or implicit legislative declaration to the contrary, because the Legislature can not be presumed, from a general grant of authority, to have intended to sanction or legalize any acts or any use of property that will create a private nuisance which will injuriously affect the property of another." Then after referring to the power of the State to authorize the summary destruction of private property for the preservation of the public health, the learned judge continued: "But there is a broad distinction between a summary destruction of an offending thing, and a direct injury to unoffending property—that is, property itself not liable to destruction because not dangerous to the public health or safety. The immediate and imminent danger to life or health justify, under the police power, the one, whilst the other is left to be

redressed in the due course of the law. However broad, therefore, may be the powers of a municipality to erect and maintain hospitals and pest-houses for the segregation and treatment of contagious and infectious diseases; and however necessary their exercise may be, they must, generally speaking, be exerted and put into operation subject to the no less well defined right of the individual to possess and enjoy his unoffending property without the molestation of a nuisance."

If we substitute "Sewage Disposal Plant" for "hospitals and pest-houses," as used in that opinion, is not the language of that learned judge peculiarly applicable to this case? Hospitals and pest-houses are as essential for a large city as such a plant as this. In a case such as the one now before us, however, where the plant is essential to the health and comfort of the people at large, an injunction should not issue unless under very extraordinary circumstances, but the party should be left to his or her remedy at law. The evidence shows that the property of the city adjoins that of the plaintiff, although the plant itself is perhaps a quarter of a mile away. If the plant had been constructed on the portion of the city's land which adjoins that of the plaintiff, and such injuries resulted to the defendant as shown in this case, can it be possible that no right of action would have accrued to her? It seems to us that that can only be answered in one way—that she would have had such action. If that be so, why should she be deprived of it under the present condi-. tions?

What seems to be the decided weight of authority holds that a municipality in making its drains and sewers is not immune, if it so constructs or maintains them as to amount to a nuisance. Indeed, in the case just referred to JUDGE McSHERRY said: "Where commissioners of sewers and boards of health have obtained statutory powers of drainage into rivers, streams and natural water courses, the power must be exercised so as not to create a nuisance or interfere with

the private rights of individuals. 2 *Add. on Torts,* sec. 1085. The mere power to erect and maintain hospitals and pest-houses does not imply or include the further power to erect and maintain them in such a way or at such a place as will cause injury to others."

In 6 *McQuillin on Mun. Cor.,* sec. 2697, and the succeeding sections, the subject of a municipality's liability for creating a nuisance is discussed in connection with its construction of sewers and drains, and many cases are cited. In Section 2699 that author said: "A municipality has no more right to create a nuisance to the injury of another than has an individual, and hence where a sewer outlet is a private nuisance, damages are recoverable. Where a sewer is maintained by a municipal corporation so as to *discharge sewerage and filth upon private property,* or to emit *offensive odors,* creating an unsanitary and dangerous condition interfering with the safe and comfortable enjoyment of such property so as to impair its value, the municipality will be liable." Again in Section 2706 that author discusses the right of a municipality to discharge its sewers into water courses, gives the views of the different courts on the subject, and then says: "The *general rule,* however, is that if a *nuisance* is created, the municipality is liable, subject to certain exceptions as to the right to pollute as acquired by *prescription;* and this applies equally well, whether the sewerage is discharged into a running stream, an abandoned channel of a river, an artificial *canal,* or a *pond.* * * * The nuisance may consist in (1) the pollution of the *waters* to the injury of a riparian owner. * * * (2) *The pollution of the air by creating noxious odors,* or (3) the deposit of *filth on the banks* of the stream or pond."

In 28 *Cyc.* 1293, it is said: "If in the exercise of its corporate powers a municipal corporation creates or permits a nuisance by nonfeasance or misfeasance it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable to damages in a civil action to any person

suffering special injury therefrom. So a municipal corporation has no more right to erect and maintain a nuisance on its own land than a private individual would have to maintain such a nuisance on his land: it is entitled to exercise the same rights in respect to the use of its property as an individual, and any lawful use thereof, or the doing of those things which the law authorizes, can not, it is held, amount to a nuisance in itself, although the execution of the powers may be in such a manner as to result in an actionable nuisance." Again on page 1323 of that volume it is said: "If a municipal drain or sewer is so constructed or maintained as to amount to a nuisance, the municipality is liable in damages therefor." See also 2 *Dillon on Mun. Cor.* (5th Ed.), 1040, and 5 *Ibid.* 3052; 20 *Am. & Eng. Ency. of Law* 1209.

In 1 *Poe,* sec. 203, illustrations of nuisances are given and it is said that if a man erects on his own land certain things mentioned "so near the dwelling house of another as to render it unfit for occupation, he is responsible in damages. So also, if he conducts any lawful trade and business which infects or taints the surrounding air with noxious gases or offensive smells, so as to be injurious to the health of the occupants of neighboring houses." That section concludes by saying that a defendant can not "by any use of his own land deprive the plaintiff of the lawful use of his property with all the right which the common law affords, one of the most important of which is the right to have the air that passes over it pure and unpolluted." See cases cited in his notes and *Oldenburg and Kelley case, supra.* In this State it is well settled that when a municipal corporation has the power to abate a nuisance it is liable to persons injured in consequence of its failure to exercise such power, as shown in *Taylor* v. *Cumberland,* 64 Md. 68; *Krantz* v. *Baltimore, Ibid.* 491; *Hitchins* v. *Frostburg, supra; Cochrane* v. *Frostburg,* 81 Md. 54; and it would be strange if notwithstanding its liability for failure to abate a nuisance created by another it could with impunity commit one itself.

We find nothing in the statute under which the city is acting suggestive of an intention of the Legislature to authorize the city authorities to commit a nuisance. Nor can it be said that the Legislature contemplated that the performance of what it authorized to be done would necessarily or even probably result in such damage to private property as the plaintiff complains of. If it had been so understood by the members of the Legislature, is it not reasonable to assume, especially as the city was authorized to extend its works into the counties, that provision would have been made for compensation of those whose properties would be injured? If then the operation of this plant be a nuisance, as the evidence of the plaintiff tends to show, we are of the opinion that the city is liable. We fully realize the importance,—the necessity—of a sewerage system for the City of Baltimore, and it should not be held responsible in any case unless it is clearly shown that the party suing is entitled to recover. It may be that some explanation may be given, or that some defense other than what we have passed on may be offered at another trial, but we are compelled to hold that as the case is presented by this record there was error in not submitting it to the jury.

It follows that the judgment must be reversed.

*Judgment reversed, the appellee to pay the costs.*