# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 8, 1925.

LOUIS CARETTI
VS.
THE BRORING BUILDING COMPANY.

*Lewis W. Lake* for plaintiff.
*J. Chas. Linthicum & Bro.* and *Geo. Arnold Frick* for defendant.

STANTON, J.—

This case involves a situation that is important and serious in its consequences to both the plaintiff and the defendant.

The defendant company bought a tract of land about seven to nine years ago, and in the late winter of 1919-1920 began plans to develop a portion of the land by the erection of dwellings. The land is now in Baltimore City, being a section brought in by the Annexation Act of 1918. This section of the city is being rapidly developed. But before any buildings can be erected, requiring sewer service, application must be made to the Sewerage Commission of Baltimore City, submitting a sketch or layout. The Sewerage Commission prepares a sewer plan, which must be approved by the Health Department of Baltimore City. All of this was done in the present case. In accordance with the sewer plan as prepared by the Sewerage Commission of Baltimore City, the sewers referred to in this case were built. It consists of house connections which drain into pipes laid in the beds of the streets, which streets are laid out on the land of the defendant, and the larger drains laid in the beds of the streets, empty into a septic tank, where the solids settle, and the liquids are discharged into another eight-inch pipe which empties into Herring Run.

The City of Baltimore paid one-half of the cost of constructing the septic tank. Ever since the installation of the sewer plan the Health Department of Baltimore City has exercised continuous supervision over the character of effluent which empties into Herring Run. The chemical examination and analysis each six months at least, has never disclosed pollution as great as one-half of one per cent. Until November, 1921, the water which flowed from this discharge pipe, was chemically treated by the Health Department, because it was caught then, as it now is, in the flow of Herring Run, and was before and until that time used by the Baltimore County Water Company, to supply Highlandtown and Canton, with water for domestic purposes. The city officials, who testified in this case, say that the chemical treatment was discontinued about November, 1921, because the county water supply was abandoned, and there was no longer any occasion to destroy the bacteria which might be in the water, but largely on account of the expense.

The expense entailed would not commend itself as a sufficient reason to justify the city officials in not giving every measure of relief from odors, mosquitoes and flies.

It is primarily these annoyances about which the plaintiff complains, as well as the loss of water supply for the stock and fowls kept on his place. But it must not be overlooked that the plaintiff is not any longer a resident of a rural locality, with conditions such as existed prior to annexation. He is now a resident of a city containing about 800,000 people, and lives in a rapidly growing residential locality. As a resident of a city he will be required to endure some of the annoyances which urban life occasions.

Some of the plaintiff's witnesses testify that the odors are very similar to such as were experienced some few years past by the people of this city who lived and worked about the inner harbor at Locust Point and along Light street wharf. While these odors were very obnoxious, they were not dangerous to health, and everybody had to endure them until the extension of the sewerage system could relieve the situation. This was also true in a lesser degree while Jones' Falls flowed through the very center of Baltimore

City, as an uncovered stream. And the grading of streets in this locality, with the drainage which flows from this source, as well as the surface drainage generally, has in all probability restroyed any hope of future use of the water in Herring Run for consumption by any living thing.

Dr. Jones, the Commissioner of Health for Baltimore City, and Mr. Keefer, both testify that the odors complained about by this plaintiff, are not injurious, or likely to impair the health of the residents in that vicinity, and that his approval of the existing sewerage plan in this development, is the best that can be operated, under existing conditions, and the lesser of two evils; because any receptacle would probably result in overflow discharge more objectionable than that about which the plaintiff now complains.

The testimony discloses that the defendant constructed the sewers and septic tank under plans laid down and drawn by the Sewerage Commission of Baltimore City, and in so acting it was the agent of the city in building a portion of the sewer system of Baltimore City. That as part of the approval and consideration for the permission to construct the sewers, an agreement was entered into in August of 1920, in which the defendant agreed to transfer the sewers upon demand of the city, or when the trunk sewers of the city plan were built in that section, and that pending that event, the city would supervise and operate the septic tank, which has been done continuously since its construction.

The defendant claims that the bill of complaint is defective because the city of Baltimore is not made a party. This is immaterial in the view which this Court entertains about the facts of this case.

It is clearly shown that this sewer plan is a portion of the general lay-out by the Sewerage Commission of Baltimore City for the entire city; and awaits being connected with the city sewerage and disposal plant, when and as the trunk sewers are built to this locality. The delay incident to the enormous volume of work to keep up with the development of the suburbs of the city in various localities enters into this case; as does also the enormous expense which would result to attempt to build the trunk sewers either

as rush work, or in any short interval of time. The odors are not injurious to health, neither is the effuent which is discharged from this septic tank. There are seventy odd houses now connected to this plant, with others under construction, but which can only be connected after application to, and approval by, the city authorities, all of which emphasizes the part the City of Baltimore is playing in this particular work.

The great inconvenience to many now using these sewers, as well as the possible danger to the public health, raises the question whether it is not better for the few to enduce the annoyance a little longer, than to stop the plans of the city in endeavoring to cope with the building of the outlying sections of the New Annex.

The writ of injunction is not a matter of right, but rests in the sound discretion of the Court. The matters complained of in this case are as much a public as private nuisance. The evidence does not show extraordinary circumstances, to the special damage of the plaintiff, except the claim that the increased current has cut into the land of the plaintiff. This is too remote to hold as the direct or indirect cause of any damage occasioned by this defendant, any more than freshets due to unusual rains, such as was referred to and occurred while this case was on trial. The discharge from this septic tank is only twenty thousand gallons every twenty-four hours into a stream flow of over two millions of gallons.

This case is distinguishable from the Neubauer case (142 Md. 87) in that the Neubauer case was a rural development beyond the city line. The plan of sewers was very different from the plan in this case. There is nothing to show that the parties had ever applied for or received the approval of the Health authorities for Baltimore County. The system was a private and independent system; whereas in this case the plaintiff is a resident of Baltimore City, and the work complained about is a sectional development of the sewer plan of the city, continuously under the supervision of the Sewerage Commission and the Health Department of Baltimore City.

After a careful consideration of the facts of this case, the Court has concluded that it is not one for an injunc-

tion, but if there is any special damage to the plaintiff he must be left to an action at law. (Taylor vs. Mayor and City Council, 130 Md. 133.)

An order will be signed dismissing the bill of complaint.